# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| Peter Hoffman, | ) | |
| | ) | |
| Appellant, | ) | No. 07 CV 5612 |
| | ) | |
| v. | ) | |
| | ) | Judge Darrah |
| UAL Corporation, | ) | |
| Reorganized Debtor, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| Peter Hoffman, | ) | |
| | ) | |
| Appellant. | ) | No. 08 CV 594 |
| | ) | |
| v. | ) | Judge Darrah |
| | ) | |
| United Air Lines, Inc., | ) | |
| Reorganized Debtor. | ) | |
| | ) | |
| Appellee. | ) | |

---

## CONSOLIDATED BRIEF OF UAL CORPORATION AND UNITED AIR LINES, INC. IN OPPOSITION TO THE APPEALS OF PETER HOFFMAN

Marc Kieselstein, P.C.
David R. Seligman
Michael B. Slade
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-3348 (tel)
(312) 861-2200 (fax)
mslade@kirkland.com

Counsel for Appellee

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

STATEMENT OF THE CASE AND THE FACTS ..............................................................2

I.      Hoffman's Employment With United.....................................................................2

II.     Hoffman's Competitive Transfer Request .............................................................2

III.    Hoffman's New York Lawsuit...............................................................................3

IV.     Hoffman's Proof of Claim .....................................................................................4

V.      Hoffman's Motion for Reconsideration.................................................................6

VI.     Hoffman's Motion For Leave To File An Untimely Appeal .................................8

VII.    Hoffman's Two Appeals To This Court .................................................................9

STANDARD OF REVIEW ...................................................................................................9

ARGUMENT ......................................................................................................................10

I.      The Bankruptcy Court Did Not Abuse Its Discretion In Denying Hoffman's
        Motion For Reconsideration. ...............................................................................10

II.     The Bankruptcy Court Did Not Abuse Its Discretion In Denying Hoffman Leave
        To File An Untimely Appeal. ..............................................................................15

III.    The Bankruptcy Court Did Not Abuse Its Discretion In Denying Hoffman Leave
        To Conduct Additional Discovery........................................................................19

IV.     Hoffman's Appeals Are Also Baseless On Other Grounds. ...............................21

        A.      Hoffman Concedes His Lack of Qualifications For The Job Of Pilot...................21

        B.      Hoffman's Lawsuit And Proof Of Claim Were Time-Barred. ..............................22

        C.      United Policy Prohibited Hiring Hoffman As A Pilot ...........................................23

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amadio v. Ford Motor Co.,*
    238 F.3d 919 (7th Cir. 2001) ................................................... 15

*Beckel v. Wal-Mart Assocs., Inc.,*
    301 F.3d 621 (7th Cir. 2002) ................................................... 15

*Bernstein v. La Rue,*
    501 N.Y.S.2d 896 (N.Y. App. Div. 1986) ......................... 22

*Bombard v. Ft. Wayne Newspapers, Inc.,*
    92 F.3d 560 (7th Cir. 1996) ..................................................... 21

*Buckner v. Sam's Club, Inc.,*
    75 F.3d 290 (7th Cir. 1996) ..................................................... 15

*Buttron v. Sheehan,*
    2003 WL 2180112 (N.D. Ill. 2003) ....................................... 15

*Caisse Nat'l de Credit Agricole v. CBI Indus.,*
    90 F.3d 1264 (7th Cir. 1996) ................................................... 13

*Colley v. National Bank of Texas,*
    814 F.2d 1008 (5th Cir. 1987) ................................................... 7

*Easley v. Kirmsee,*
    382 F.3d 693 (7th Cir. 2004) ................................................... 11

*Fishman v. Teter,*
    133 F.2d 222 (7th Cir. 1943) ..................................................... 5

*In re American Metrocomm Corp.,*
    328 B.R. 92 (D. Del. 2005) ....................................................... 16

*In re Colley,*
    814 F.2d 1008 (5th Cir. 1987) ................................................. 10

*In re Farley, Inc.,*
    211 B.R. 889 (Bankr. N.D. Ill. 1997) ................................... 13

*In re Gomez,*
    250 B.R. 397 (Bankr. M.D. Fla. 1999) ................................... 7

*In re KMart Corp.,*
    381 F.3d 709 (7th Cir. 2004) ........................................................................ 9, 19

*In re Mayhew,*
    223 B.R. 849 (D. R.I. 1998) ............................................................................ 17

*In re Opelika Mfg. Corp.,*
    94 B.R. 484 (N.D. Ill. 1997) ........................................................................... 10

*In re Pyramid Energy, Ltd.,*
    165 B.R. 249 (Bankr. S.D. Ill. 1994) ............................................................. 18

*In re Shepherds Hill Dev. Co., LLC,*
    316 B.R. 406 (1st Cir. BAP 2004) .................................................................. 17

*In re Swann,*
    2007 WL 1728706 (D. Md. 2007) ................................................................... 17

*In re Warrick,*
    278 B.R. 182 (9th Cir. BAP 2002) ................................................................. 17

*Kaplan v. City of Chicago,*
    2004 WL 2496462 (N.D. Ill. 2004) ................................................................ 15

*King v. Cooke,*
    26 F.3d 720 (7th Cir. 1994) ........................................................................... 13

*Lituchy v. Guinan Lith. Co.,*
    400 N.Y.S.2d 158 (N.Y. App. 1977) .............................................................. 22

*Matter of Simpson,*
    41 F.3d 316 (7th Cir. 1994) ....................................................................... 9, 19

*McCormick v. City of Chicago,*
    230 F.3d. 319 (7th Cir. 2000) ......................................................................... 7

*Oto v. Met. Life Ins. Co.,*
    224 F.3d 601 (7th Cir. 2000) ......................................................................... 13

*Pioneer Inv. Serv. Co. v. Brunswick Assoc.,*
    507 U.S. 380 (1993) .................................................................................. 16, 17

*Prizevoits v. Indiana Bell. Tel. Co.,*
    76 F.3d 132 (7th Cir. 1996) ........................................................................... 17

*Rogers v. Wood,*
    910 F.2d 444 (7th Cir. 1990) ......................................................................... 11

*Sadowski v. Bombardier,*
    539 F.2d 615 (7th Cir. 1976) ............................................... 11

*Schmidt v. McKay,*
    555 F.2d 30 (2d Cir. 1977).................................................... 22

*Sears, Sucsy & Co. v. Ins. Co. of N.A.,*
    392 F. Supp. 398 (N.D. Ill. 1976) ........................................ 12

*Snowden v. Litton Loan Servicing, Inc.,*
    356 B.R. 429 (N.D. Ill. 2006) .............................................. 12

*Spirk v. Sullivan,*
    2003 WL 22048077 (N.D. Ill. Aug. 28, 2003) ...................... 9

*Talano v. NW. Med. Faculty Found., Inc.,*
    273 F.3d 757 (7th Cir. 2001) ............................................... 9

*Towl v. Block,*
    546 N.Y.S.2d 924 (N.Y. Sup. 1989).................................... 22

*Weir v. Propst,*
    915 F.2d 283 (7th Cir. 1990) ............................................... 10

**Rules**

Bankruptcy Rule 3008 ...................................................................... 7

Fed. R. Bankr. P. 8002(c)(2) ........................................................... 16

Fed. R. Civ. P. 60(b) ...................................................................... 11

**Statutes**

11 U.S.C. § 502(j) ........................................................................... 7

14 C.F.R. Part 121........................................................................... 4

## INTRODUCTION

Peter Hoffman resigned from United in 1992. In August 1999, Hoffman filed a lawsuit, claiming that United breached an oral contract to consider him for a job as a pilot in exchange for his resignation. That suit was still pending when United filed for bankruptcy on December 9, 2002. Hoffman converted his lawsuit into a $2.25 million proof of claim in United's bankruptcy.

The Bankruptcy Court disallowed Hoffman's claim based on his own admission—in undisputed deposition testimony—that he was not qualified to be a United pilot and had been rejected by every airline to which he applied. Said differently, even if United had considered Hoffman for a pilot position, he never would have been hired, and therefore had no valid cause of action against United under any circumstances.

Hoffman *did not timely appeal* from the order disallowing his proof of claim—that order is *final*. Hoffman did, however, file two other motions that were denied by the Bankruptcy Court, were timely appealed, and are presently before this Court in two separate appeals.

*First*, Hoffman filed a motion for reconsideration of the Bankruptcy Court's decision disallowing his claim. In that motion, Hoffman belatedly attempted to introduce new evidence that was available—but was not shown to the Court—prior to judgment. Nor would that new "evidence" have changed the result in any case. Accordingly, the Bankruptcy Court denied Hoffman's motion for reconsideration.

*Second*, Hoffman sought to file an untimely appeal of the order disallowing his claim. Hoffman claimed that his failure to appeal timely was due to "excusable neglect" under Bankruptcy Rule 8002(c). The Bankruptcy Court disagreed. The reason was simple: Hoffman failed to appeal timely because he did not listen to the Bankruptcy Court's clear instructions and follow unambiguous court rules. Such neglect is not "excusable" under Seventh Circuit law.

1

As described below, both of the Bankruptcy Court's decisions were correct. Neither comes even close being the abuse of discretion Hoffman must demonstrate to succeed on appeal. Moreover, even if there was some error below (and there was not), there are multiple alternative grounds under which to affirm the Bankruptcy Court's judgment. This Court should affirm.

## STATEMENT OF THE CASE AND THE FACTS

### I. Hoffman's Employment With United

Peter Hoffman was a Stations Operations Representative ("SOR") for United at New York's JFK International Airport. Hoffman worked for United for six months: from June 15, 1992 until he resigned on December 18, 1992. (A12).[1] The SOR was a position that paid $7 per hour, and was subject to a six month probationary period. (A60, 64, 76-77).

Hoffman's supervisor was Robert Cafiero. On December 18, 1992, Cafiero notified Hoffman that his six-month probationary period had ended unsuccessfully, and asked Hoffman to resign in lieu of being fired. (A80). Hoffman had "two very big problems" working for United—he would leave his post frequently to engage in personal conversations with others, and he could not get along with his co-workers. (A77-78). Accordingly, Hoffman tendered his written resignation from United. (A83).

### II. Hoffman's Competitive Transfer Request

On December 18, 1992, the day of his resignation, Hoffman handed Mr. Cafiero a Competitive Transfer Request ("CTR") for a pilot position. United's "CTR" policy permitted employees who had completed at least one year of service to request a transfer to another job at

---

[1] Hoffman has not cited to <u>any</u> portion of the record in his brief. Accordingly, United has prepared an appendix of items that were before the Bankruptcy Court and have been designated by the parties into the appellate record, and has filed that appendix along with this brief. Citations to the appendix are to "A" and the appropriate page number.

the company by submitting a CTR form to their supervisor, who would complete the form and forward it for further processing. (A58, A70). However, because Hoffman had not worked for the company for a full year, and was no longer a United employee at all, he was not eligible for a competitive transfer to Flight Officer or any other position in the Company. (A70, A75-76).

Hoffman's last day as a United employee was January 2, 1993. (A30). Five days later, on January 7, 1993, Cafiero walked Hoffman's CTR down the hall to flight operations for their informal review of Hoffman's qualifications. (A76). Hoffman was not offered an interview, and no further follow-up with respect to Hoffman's candidacy occurred. Hoffman waited a month or two, then called Mr. Cafiero to check on the status of his CTR. On March 29, 1993, Hoffman wrote Cafiero a note asserting that Cafiero has breached his promise:

> Bob: I phoned you at home out of desperation. You have promised, since Dec, to complete and forward my flight officer application. Needless to say, it has not been done. I can not proceed until it has been forwarded. I understand you are busy. Please process it ASAP. Thank you. Peter (A23).

### III.     Hoffman's New York Lawsuit

On August 6, 1999—more than six years after claiming that Cafiero had breached an alleged promise—Hoffman filed a complaint in a New York state court. (A16). Hoffman claimed that United had breached a contract by failing to consider him for the position of Flight Officer in exchange for his resignation. Hoffman alleged that "[h]ad [United] complied with its promise to consider [Mr. Hoffman] for the position of Flight Officer it would have accepted his application therefore and hired him thereas." (A16, ¶ 1). Hoffman claimed that he and Cafiero had entered into an oral contract under which Hoffman would resign his position as SOR, and Cafiero would process his CTR. (*Id.* ¶ 9).

United removed the case to the U.S. District Court for the Southern District of New York. (A42). Both Hoffman and Cafiero were deposed, written discovery was served and completed,

3

and the discovery period closed. (A43, 45, 47). During discovery, Hoffman admitted under oath that he had applied to United and other carriers for pilot positions before his supposed "deal" with Cafiero, but never got to the interview stage. (A61). The reason was simple—Hoffman lacked the qualifications for the job:

> Q: Have you applied to airlines other than United for a pilot position?
>
> A: Prior to but not subsequent to my United Airlines application.
>
> Q: What other airlines were those?
>
> A: I don't remember. Perhaps Continental, perhaps American. At least one of the majors. I learned quickly that I didn't have the skill, hours or experience to qualify for a job in any other way than the one that we've contemplated . . . . *As I knew, I didn't have sufficient experience to qualify for a job with United, American, Continental or any of the [Part] 121[2] carriers.* There was no point i[n] my reapplying, reapplying reapplying. It would go nowhere. (A63-64) (emphasis added).

While the case was still in the Southern District of New York, Judge Katz considered dismissing Hoffman's case due to his failure to meet multiple court deadlines. (A47-48). Judge Katz ultimately decided, however, to resolve the case on the merits—and directed United to file a motion for summary judgment. (*Id.*). United did so. However, United's motion for summary judgment was not ruled upon before December 9, 2002, and Hoffman's lawsuit was stayed (and ultimately dismissed) when United entered bankruptcy.

## IV.    Hoffman's Proof of Claim

Within the context of United's bankruptcy, Hoffman filed Proof of Claim No. 345, citing his New York lawsuit as the basis for United's liability to him. United objected to Mr.

---

[2] "Part 121" is the set of federal regulations governing commercial airlines such as United. 14 C.F.R. Part 121.

Hoffman's Proof of Claim on January 30, 2007. (A1). Hoffman's response to United's Claims Objection attached his Complaint, made the same factual allegations, and renewed his demand for $2,250,000 due to United's alleged breach of contract. (A12).

United argued that Hoffman's claim should be dismissed on the papers, prior to trial. Hoffman had offered no facts to support either his breach of contract or promissory estoppel theories, and his case suffered from numerous fatal flaws. Among other things, Hoffman's claims against United could not survive three dispositive arguments:

- *Timeliness*. Hoffman's claim was time-barred because he had filed his lawsuit more than 6 years after this alleged contract was purportedly breached;

- *Impossibility*. Hoffman's claim could not succeed because, under United policy, he was not eligible for a competitive transfer to the pilot ranks (or any other job). Hoffman could not receive a CTR because: (1) he had not completed the one-year of employment that was a prerequisite to a transfer; and (2) he had resigned and was no longer a United employee, and therefore could not be "transferred."

- *Lack of Qualifications*. Hoffman admitted under oath that he lacked the qualifications and experience to be hired as a pilot by any major airline, and in fact had been rejected repeatedly before. Therefore, there was no way he would have been hired by United as a pilot even *if* there was some promise to interview him for such a position.

Hoffman filed multiple pleadings in an effort to defend his position—including a reply and sur-reply brief. Never once, prior to judgment, did Hoffman offer any evidence whatsoever to demonstrate that he was qualified for the job.

On June 28, 2007, the Bankruptcy Court sustained United's Objection and disallowed Hoffman's claim. (A91-92). The Court's reasoning was simple:

> In order to prevail, Hoffman must establish that he would have been hired as a pilot had the CTR been processed. This is a material fact. *See Fishman v. Teter*, 133 F.2d 222 (7th Cir. 1943) (defining a material fact as one that a party must establish in order to prevail). . . .
>
> To support its contention that Hoffman would not have been hired as a pilot, even had the CTR been processed, United offered

> Hoffman's own admission that he was not qualified to be a pilot
> and that his application for that position had been rejected by other
> major airlines. In response, Hoffman claims that he would have
> been hired through the CTR process in spite of his lack of
> qualification, but Hoffman offers no evidence at all to support this
> assertion. The only evidence before the court is that Hoffman is
> not qualified to be a pilot, and the only reasonable conclusion is
> that he would not have been hired as a pilot even had the CTR
> been processed.

(A88). On June 28, 2007, the Court entered a formal order disallowing Hoffman's proof of

claim in its entirety. (A91).

Hoffman told the Bankruptcy Court that he disagreed with the Court's decision and

wanted to have it reviewed. Therefore, the Bankruptcy Court specifically counseled Hoffman to

continue checking the Court's docket because, under the applicable court rules, to preserve any

right to appeal he would have to file a notice of appeal within 10 days of docket entry.

> [THE COURT]: Mr. Hoffman, you'll have a right to appeal that
> will begin running as soon as the order is docketed, so you'll want
> to check, if you do wish to pursue appeal, to find out when that
> docketing takes place. I believe you have ten days thereafter to file
> a notice of appeal in the district court.
>
> [Hoffman]: Understood . . . .

(A89-90). Despite the Court's clear warning, Hoffman did not do anything in the ten day period

after the order was docketed. Therefore, the disallowance of Hoffman's proof of claim became

final on July 12, 2007.

## V.    Hoffman's Motion for Reconsideration

On July 19, 2007, Hoffman filed a motion for reconsideration of the Order disallowing

his proof of claim. (A93). Hoffman argued that he was, in fact, qualified to become a pilot for a

number of reasons that he had not argued prior to judgment. (A94-95) Hoffman conceded that

he had "made errors" in his "previous presentation," and hoped that he had "corrected these

errors and omissions" and claimed that he had "painted a far clear picture of why I believe that UAL not only could have hired me as a Pilot but would have." (A100).

The Bankruptcy Court denied Hoffman's motion. Judge Wedoff noted that Hoffman's motion was procedurally improper (because it was filed more than 10 days after judgment) and substantively baseless:

> Bankruptcy courts have the power to reconsider the allowance or disallowance of proofs of claim for cause. 11 U.S.C. § 502(j); Bankruptcy Rule 3008. After ten days have elapsed from the entry of an order allowing or disallowing a claim, courts generally apply the standards of Bankruptcy Rule 9024, which incorporate[s] Federal Rule of Civil Procedure 60(b) when determining whether cause exists to reconsider. *Colley v. National Bank of Texas*, 814 F.2d 1008, 1010 (5th Cir. 1987). This is particularly true where the proof of claim was actually contested rather than simply deemed allowed. *In re Gomez*, 250 B.R. 397, 401 (Bankr. M.D. Fla. 1999). . . .

> Relief under Rule 60 is an extraordinary remedy and is granted only in exceptional circumstances. *McCormick v. City of Chicago*, 230 F.3d. 319, 327 (7th Cir. 2000). Mr. Hoffman has offered no new evidence that was not available prior to judgment. He simply contends in his motion for reconsideration that the court erred and that its ruling was incorrect.

> However, the final order was not [in]correct. Put simply, it was Mr. Hoffman's burden to establish that he would have been hired by United had an application that he sought to have submitted were actually submitted. He failed to offer any evidence that would reasonably have supported that conclusion. His belief that he could find such evidence if given a further opportunity to do so does not justify denial of summary judgment. The time for him to have developed the evidence to support his assertion was during the time of discovery. Discovery is closed and has been closed for years.

(A133, 135). Judge Wedoff entered an order denying Hoffman's motion for reconsideration on July 31, 2007. (A135). Hoffman filed a timely notice of appeal from that Order. (A186-87). Hoffman's appeal from the Order denying his motion for reconsideration was docketed in this Court as case No. 07-5612.

## VI.    Hoffman's Motion For Leave To File An Untimely Appeal

The day after Hoffman's motion for reconsideration was denied, he filed a motion for leave to file an untimely appeal from the June 28, 2007, Order disallowing his claim.  (A136). Hoffman claimed that he failed to appeal the disallowance order on a timely basis because he did not know the applicable rules—even though Judge Wedoff *specifically told him what to do*. Hoffman claimed that he failed to file a notice of appeal within 10 days of docket entry because he did not check the docket, in reliance on a New York rule that required the order to be 'served' upon him after it was entered.  Therefore, according to Hoffman, he did not know that the order was entered on the docket until the day before his time to appeal expired.  (A137-38).

Two different Bankruptcy Court judges rejected Hoffman's argument.  Initially, Judge Hollis ruled that Hoffman's failure to listen to the Court's clear instructions or follow the federal rules did not constitute "excusable neglect" under Bankruptcy Rule 8002(c):

> Judge Wedoff, unlike what he would do with a lawyer, spent quite a bit of time explaining to you about the appeal process and how you had to be prepared and you had to move within an "x" amount of time.  And you just kind of sat back and, based on your own admissions of fact, you have not stated a case of excusable neglect. . . . [E]very step of the way you have not been diligent.

A156-57.  Undeterred, Hoffman filed another motion for reconsideration.  (A160).  That was denied by Judge Wedoff:

> The fact of the matter is that the ruling that I made a long time ago is correct.  There was not a timely appeal.  There has been no showing on your part of any excusable neglect. . . .
>
> Given that you had an express warning from me that you needed to check the docket to find out when the order was entered and that you had 10 days from the date the order was entered to file a Notice of Appeal, my finding, like Judge Hollis'[s], would be that that is not excusable.  You simply ignored the advice that you were given on the record by the Court.  There is no excuse for that.

(A184).  Hoffman appealed from the order denying him leave to appeal untimely.  (A188).

**VII.    Hoffman's Two Appeals To This Court**

Hoffman's initial appeal—from the denial of his motion for reconsideration—was docketed as case No. 07-5612. After Hoffman filed a second notice of appeal, the parties filed a joint motion agreeing that Hoffman's second appeal—from the denial of his motion to appeal untimely—presented overlapping issues of fact and law with his first. *See* Case No. 07-5612, Docket No. 8, at ¶ 4. Therefore, the parties agreed that unless consolidation was denied (and therefore the appeals proceeded before two different judges), Hoffman would file a single brief addressing both appeals. The purpose of this agreement was obvious: economy and efficiency.

Because the clerk of court directed Hoffman's second appeal to this Court, no motion for consolidation pursuant to Local Rule 40.4 was necessary or appropriate. Nevertheless, despite the briefing order entered by this Court, Hoffman's brief only addressed the subjects of his first appeal. For the sake of efficiency and judicial economy, and because that is what the Court ordered, United will address ***both*** of Hoffman's baseless appeals in this brief.

**STANDARD OF REVIEW**

Both decisions on appeal are reviewed with significant deference. As a threshold matter, this Court "reviews the Bankruptcy Court's decision on a motion for reconsideration for abuse of discretion." *Spirk v. Sullivan*, 2003 WL 22048077, at *7 (N.D. Ill. Aug. 28, 2003). "Such abuse exists only in situations in which no reasonable person could agree with the [bankruptcy] court." *Id.* (citing *Talano v. NW. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001)). Similarly, a Bankruptcy Court's decision rejecting excusable neglect "will be overturned only in extreme cases, when the bankruptcy court has abused its discretion." *In re KMart Corp.*, 381 F.3d 709, 712 (7th Cir. 2004); *see also Matter of Simpson*, 41 F.3d 316, 320 (7th Cir. 1994) ("[T]he bankruptcy judge employed the 'excusable neglect' standard and found that [claimant] fell short. Appellate review of that decision is deferential . . ..") (citation omitted).

9

ARGUMENT

I.    **The Bankruptcy Court Did Not Abuse Its Discretion In Denying Hoffman's Motion For Reconsideration.**

The Bankruptcy Court addressed Hoffman's motion for reconsideration correctly. As Hoffman appears to recognize, Hoffman had no rights whatsoever under Federal Rule 59 or Bankruptcy Rule 9023 because he did not file a motion (or anything else) within 10 days of entry of the judgment. The Seventh Circuit has made clear that once the time limits for appeal have expired (as they had for Hoffman), Rule 59 motions for reconsideration cannot give new life to a litigant's claim. *See Weir v. Propst*, 915 F.2d 283, 285 (7th Cir. 1990) ("the time limits in section 1292(b) may not be circumvented by the facile device of asking for reconsideration of the order sought to be appealed under that section").

Hoffman's only procedural vehicle to seek reconsideration, therefore, was Bankruptcy Rule 3008. But at best, Rule 3008 would permit Hoffman to invoke Bankruptcy Rule 9024 and Federal Rule 60(b) and their narrow categories for relief, none of which Hoffman fits within. *See In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) ("We interpret Rule 9024 to provide that, when a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim."); *In re Opelika Mfg. Corp.*, 94 B.R. 484, 487 & nn. 6-7 (N.D. Ill. 1997) (rarely will Rule 3008 give rise to a valid motion for reconsideration made more than 10 days after the judgment).

Bankruptcy Rule 9024 and Federal Rule 60(b) do not help Hoffman. Those provisions allows for relief from a final judgment only in case of mistake, surprise, "excusable neglect," or "newly discovered evidence which by due diligence could not have been discovered in time to

10

move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b). Before the Bankruptcy Court, Hoffman's only argument in his motion for reconsideration was that he had additional "evidence," none of which was "newly discovered" (as he conceded at the time and on appeal). (A94-100). Neither mistake nor surprise was afoot, and as a matter of hornbook law, Rule 60(b) did *not* excuse Hoffman's failure to present evidence that he had in his possession prior to judgment. Hoffman's conduct clearly qualified as neglect, but not "excusable" neglect. *See, e.g., Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (Rule 60(b) cannot give relief from "inexcusable carelessness"); *Rogers v. Wood*, 910 F.2d 444, 449 (7th Cir. 1990) ("[N]egligent mistake, evincing a lack of due care, is not a proper ground for relief under Rule 60(b)."); *Sadowski v. Bombardier,* 539 F.2d 615, 618 (7th Cir. 1976) ("Rule 60(b) is not to be invoked to give relief to a party who has chosen a course of action which in retrospect appears unfortunate or where error or miscalculation is traceable really to a lack of care.").

On appeal, Hoffman argues that the Bankruptcy Court "did not address whether other reasons under Rule 60 existed." (Hoffman Br. at 7). Specifically, Hoffman claims that he argued "excusable neglect" in his motion for reconsideration, but the Bankruptcy Court never considered his argument. (*Id.*). Not so. Hoffman never mentioned "excusable neglect" in his motion for reconsideration—not even once. (A94-101). Rather, the entirety of Hoffman's motion consisted of "evidence, provided here in an <u>offer of proof</u>," which Hoffman claimed to be relevant to whether or not he was "qualified to be hired as a pilot." (A94). Hoffman's motion only invoked the "evidence" portion of Rule 60, while at the same time conceding that any such "evidence" was ***not*** "newly discovered." For that reason, Hoffman's motion for reconsideration was doomed from the beginning.

11

In any event, the Bankruptcy Court explicitly found a lack of "excusable" neglect in two separate ways. As an initial matter, the Bankruptcy Court explicitly rejected the argument that there was any justification—"excusable" or not—for Hoffman's failure to present his evidence to the Court on a timely basis. A133 ("[I]t was Hoffman's burden to establish that he would have been hired by United had an application that he sought to have submitted were actually submitted. He failed to offer any evidence that would reasonably have supported that conclusion. . . . The time for him to have developed the evidence to support his assertion was during the time of discovery. Discovery is closed and has been closed for years."). Furthermore, in later proceedings *after* Hoffman's motion for reconsideration was denied, Judges Wedoff and Hollis specifically ruled that there was no "excusable" neglect for any of Hoffman's actions. (A155-57, 183-85). Thus, there is no doubt that the Bankruptcy Court considered and rejected any argument that "excusable neglect" justified Rule 60 relief for Hoffman.[3] The Bankruptcy Court clearly did not abuse its discretion in doing so. *See Sears, Sucsy & Co. v. Ins. Co. of N.A.*, 392 F. Supp. 398, 416 (N.D. Ill. 1976) ("[I]t is not a ground for relief that a party failed to present to the court on a motion for summary judgment all the facts known to him and that might have been useful to the court.").

Not only did Hoffman's motion fall completely outside of Rule 60, but it was completely baseless. Prior to judgment, Hoffman had plenty of opportunity to present "evidence" of his alleged qualifications—opening briefs, reply briefs, surreply briefs, and even sur-surreply briefs.

---

[3] Hoffman's citation to *Snowden v. Litton Loan Servicing, Inc.*, 356 B.R. 429 (N.D. Ill. 2006) is unavailing. In that case, a debtor filed a motion for relief under Rule 60, claiming that a judgment approving the sale of his home had been obtained by fraud. Judge Kennelly remanded so that the Bankruptcy Court could consider whether that, in fact, was the case. *Id.* Here, there is absolutely no question that Hoffman based his motion on "new evidence" rather than "excusable neglect," and there is similarly no question that Judge Wedoff found both a lack of new evidence and a lack of excusable neglect. A remand for further consideration of those questions would accomplish nothing.

He failed.  Having neglected to provide evidence before judgment, Hoffman had no right to try and add some through "reconsideration."  While *newly discovered evidence* (something Hoffman does not claim) might have provided a basis for reconsideration, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."  *Caisse Nat'l de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see also Oto v. Met. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (motion for reconsideration which "merely took umbrage with the court's ruling and rehashed old arguments" inappropriate).  It is well-settled that evidence available, but not introduced, prior to judgment *cannot be considered* at all on a motion for reconsideration.  *See, e.g., In re Farley, Inc.*, 211 B.R. 889 (Bankr. N.D. Ill. 1997) ("Previously discoverable and available evidence may not be admitted or considered in the context of a motion for reconsideration.") (citing *King v. Cooke*, 26 F.3d 720 (7th Cir. 1994)).  Said another way, Seventh Circuit law *required* the denial of Hoffman's motion for reconsideration.

Further, Hoffman's post-judgment evidentiary proffer was woefully insufficient to change the result.  Hoffman's "evidence" primarily consisted of documents and a "flight log" which demonstrates, at best, that he had medical certificates and a commercial pilot certificate, along with 650 hours of flight time, in 1992.  That is entirely irrelevant.  *It was Hoffman's burden to prove he would have been hired had he been interviewed.*[4]  Hoffman has proffered no evidence whatsoever that these meager qualifications would have been sufficient to earn him a job with a major airline (to the contrary:  as Hoffman confirmed at his deposition, he was not

---

[4] Hoffman's argument on this point is puzzling.  Hoffman asserts that United "intentionally withheld facts, which admittedly they are not required to provide." (Hoffman Br. at 10).  Respectfully, that makes no sense.  United withheld nothing, but more importantly Hoffman concedes that United was "not required" to offer evidence because the burden is Hoffman's.  Nothing else matters here.

even close).    In fact, Hoffman's motion for reconsideration confirmed that, according to the hearsay source Hoffman proffered as "evidence," his qualifications were not sufficient.    In Hoffman's words:

> Major airlines, the companies that are most highly desired and attract the most competitive candidates, will require in the neighborhood of ***1,500 to 3,000 flight time hours*** and approximately 300 to 500 hours of multiengine time . . . [as] the basic minimum hiring standards, [and] the applicant truly needs to have more than just the bare essentials to have a chance at the cockpit.  (A99).

Said another way, Hoffman—by his own admission—didn't even come close to the qualifications his undisclosed hearsay source identified.    That must be why, under oath at deposition, Hoffman testified that he "***didn't have sufficient experience to qualify for a job with United, American, Continental or any of the [Part]121 carriers.***"  (A64) (emphasis added).

Hoffman claims on appeal that his admissions at deposition were only a "sound bite" and that other parts of the deposition transcript provide evidence that the was qualified to be a pilot. (Hoffman Br. at 10-11).  Nonsense.  The additional testimony referred to by Hoffman includes: (1) his personal opinion that the standards for being hired as a pilot are lower if you are employed in another position at United (and thus are an "insider") as opposed to somewhere else (and thus are an "outsider"); and (2) an alleged statement by a different United pilot that "***if you qualify*** . . . get a job with United Airlines and then make the request to transfer."  (A64 (emphasis added)).    Hoffman's personal opinion that the pilot standards were lower for "insiders" is, with all due respect, irrelevant—it is certainly not evidence that United's "insider" standards were, in fact, lower, or that Hoffman would have met the allegedly lower standards. Moreover, Hoffman's alleged conversation with Mr. Mathot provides no help at all, given the complete lack of evidence that Mathot even knew—let alone opined on—what Hoffman's actual qualifications were.

Hoffman concludes his argument with what he believes is a rhetorical question: "one must ask, if I was not qualified to be hired by United as a pilot for United [sic], why would my former well respected and highly experienced supervisor (Robert Cafero) of some nearly three decades of service file a transfer request. . . ." (Hoffman Br. at 12). Based on this newly minted theory, Hoffman "represent[s]" to this Court that Cafero "pre-qualified" him for a pilot position before filing the CTR. (*Id.*). Unfortunately, there is no evidence in the record to substantiate this assertion. Hoffman's "representation" to this Court is of no evidentiary value whatsoever.

At bottom, Hoffman's statement under oath that he lacked the qualifications to be a pilot at United was (and must be) dispositive. Hoffman cannot not circumvent that statement through a belated motion for reconsideration, or through "representations" to this Court on appeal.[5] The Bankruptcy Court did not abuse its discretion in rejecting Hoffman's post-judgment "evidence" and denying his motion for reconsideration.

## II.    The Bankruptcy Court Did Not Abuse Its Discretion In Denying Hoffman Leave To File An Untimely Appeal.

Hoffman's second appeal (Case No. 08 CV 594) is from the Bankruptcy Court's denial of his motion to file an untimely appeal of the June 28, 2007, Order disallowing his claim. (A188).[6]

---

[5] Hoffman tried to add to the evidentiary record with sworn statements after judgment. But even before summary judgment (let alone *after* judgment), Hoffman could not evade his sworn deposition testimony by proffering hearsay-by-affidavit. Rather, because they contradict his deposition testimony, Hoffman's "sworn" written statements must as a matter of law be disregarded. *See Kaplan v. City of Chicago*, 2004 WL 2496462, at *2 (N.D. Ill. 2004) ("Where a deposition and an affidavit are in conflict, the affidavit is to be disregarded and the court should only consider the deposition.") (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001)); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (same); *Buttron v. Sheehan*, 2003 WL 2180112, at *4 (N.D. Ill. 2003) (affidavit entitled to "zero weight" when contradicted by deposition testimony) (citing *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002)).

[6] The Court granted the parties' joint motion to re-set the briefing schedule so that Hoffman's two appeals could be briefed together because they involve overlapping issues of fact and law. *See* Case No. 07-5612, Docket No. 8, 10. Nevertheless, as described above, for some reason, Hoffman has failed to address the subjects of his second appeal in his brief. In an effort to conserve the parties' and the Court's resources, United will address all of Hoffman's issues in this brief.

That decision, too, was not an abuse of the Bankruptcy Court's discretion, and should be affirmed. Because Hoffman's motion was filed on the 20th day after his time to appeal had already expired, an extension was permitted only if Hoffman demonstrated "excusable neglect" for his failure to timely appeal. Fed. R. Bankr. P. 8002(c)(2). Here, the facts are clear: Hoffman's failure to appeal timely was caused by neglect, but not "excusable" neglect. *Pioneer Inv. Serv. Co. v. Brunswick Assoc.*, 507 U.S. 380, 392 (1993) ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").

The Bankruptcy Court rejected Hoffman's motion because the facts made very clear that his neglect was not "excusable." On the day the Bankruptcy Court disallowed his claim, Hoffman appeared by telephone and specifically listened to the Court's instructions; he even asked a number of questions. (A85-90). Hoffman said that he "understood" the Court's clear dictate to check the docket so that Hoffman would know when the order was entered and when his time to appeal would run. (A89). The Court's order was entered that day by the clerk (A91-92), and appeared on the docket four days later.

Despite the Court's crystal clear instructions, Hoffman <u>admitted</u> below that he did not follow them—he failed to file a notice of appeal within 10 days of docket entry because he did not check the docket at all. (A138). In fact, to date, Hoffman has ***never*** checked the docket despite the Court's instructions. According to Hoffman, he did not know that the order had been entered until the day before his time to appeal expired. (*Id.*)

Under well-settled law, this excuse is woefully insufficient to constitute "excusable" neglect. It is well-settled that litigants (even pro se litigants) have an independent duty to monitor the docket, and their failure to do so does not give rise to "excusable neglect" for missing deadlines. *In re American Metrocomm Corp.*, 328 B.R. 92, 93 (D. Del. 2005) ("[A]

16

party's failure to receive notice of the entry of an order does not amount to excusable neglect, because a party has an independent duty to keep informed of the progress in his or her case."); *In re Warrick*, 278 B.R. 182, 187 (9th Cir. BAP 2002) ("It is well-settled that failure to receive notice of entry of judgment or order is not an excuse for an untimely appeal because it is the party's affirmative duty to monitor the dockets.") (citations omitted); *In re Shepherds Hill Dev. Co., LLC*, 316 B.R. 406 (1st Cir. BAP 2004) ("Quite simply, the 'I didn't receive notice' defense doesn't work in federal court.") (citing *In re Mayhew*, 223 B.R. 849, 856 (D. R.I. 1998)). Recognizing these facts, Bankruptcy Judge Hollis specifically asked Hoffman "How do you respond to the case law that says . . . that you have an affirmative duty to inquire of the docket? That was cited by UAL. Why should I disregard that?" (A172). Hoffman had no answer, despite filing no fewer than four briefs on the subject and participating in two oral arguments on that precise topic. The Bankruptcy Court was surely within its discretion in finding that a party that disregards the Court's specific, clear instructions in failing to file a timely appeal cannot demonstrate that his neglect was "excusable." *See Pioneer*, 507 U.S. at 392 ("ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").

Similarly, as the Seventh Circuit has held, a lack of knowledge of the applicable rules, or a misunderstanding about which rules apply, is "never" a basis for finding "excusable" neglect. *See Prizevoits v. Indiana Bell. Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996) ("The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules."); *In re Swann*, No. 05-14086-TJC, 2007 WL 1728706, at *5 (D. Md. 2007) (where plaintiff relied on prior experience in other courts and missed a deadline, excusable neglect did not exist because "the Plaintiff's failure to file a timely notice of appeal was due to his carelessness or inadvertence"); *In re Pyramid Energy, Ltd.*, 165 B.R. 249, 252

(Bankr. S.D. Ill. 1994) ("[T]he sort of 'neglect' that could and should have been avoided . . . cannot be characterized as 'excusable.' To rule otherwise would undermine the integrity of the rules and erode the time requirements that have been imposed to ensure prompt administration of bankruptcy appeals."). That is exactly what Hoffman claimed here—that he did not read, review, or follow the clear instructions of the Federal Rules with respect to perfecting an appeal, even where the Bankruptcy Court took the time to explain those rules to him. Given these facts, the Bankruptcy Court was clearly within its discretion to deem Hoffman's neglect inexcusable.

The general principles of law cited above—that a litigant's failure to check the docket to learn when an order is entered because of a misunderstanding about the applicable rules is not "excusable" neglect—were even more pertinent here, for two reasons. *First*, after disallowing Hoffman's proof of claim, the Bankruptcy Court specifically warned Hoffman that he would need to check the docket to preserve his right to appeal:

> [THE COURT]: Mr. Hoffman, you'll have a right to appeal that will begin running as soon as the order is docketed, *so you'll want to check, if you do wish to pursue appeal, to find out when that docketing takes place. I believe you have ten days thereafter to file a notice of appeal in the district court.*

(A89) (emphasis added). Hoffman said that he "understood" the Court's instructions. (*Id.*). Nevertheless, he ignored them, at his own peril. Hoffman admits that he never checked the docket at all. In light of the Court's explicit direction that Hoffman check the docket if he wished to appeal, his neglect is certainly not "excusable" as defined by the bankruptcy rules.

*Second*, a full day prior to the expiration of Hoffman's time to appeal, counsel for United specifically told Hoffman to check the docket because the order had been entered some time ago. (A154). Hoffman still did not check the docket. Nor did Hoffman file the simple, one-page notice of appeal that he ultimately filed (twice). Instead, Hoffman made the strategic decision not to timely appeal, and instead "concluded that a motion for reconsideration was the

18

appropriate step to take." (A138). Hoffman thus waited an additional 20 days to seek relief. During that 20 days, Hoffman prosecuted a baseless motion for reconsideration, wasting United's and the Bankruptcy Court's time and resources. At bottom, Hoffman's failure to appeal timely was a strategic decision, and it failed. There is no basis for finding his conduct "excusable" as defined by Rule 8002(c)(2). The Bankruptcy Court was well within its wide discretion in finding Hoffman's neglect inexcusable.

Accordingly, for the reasons described above, the Bankruptcy Court did not abuse its discretion in finding that Hoffman had not demonstrated "excusable neglect" for his failure to appeal on a timely basis. The Bankruptcy Court's decision should be affirmed. *See KMart*, 381 F.3d at 712; *Simpson*, 41 F.3d at 320.

## III.    The Bankruptcy Court Did Not Abuse Its Discretion In Denying Hoffman Leave To Conduct Additional Discovery.

Finally, Hoffman claims that the Bankruptcy Court erred in denying him additional discovery prior to entering summary judgment against him. (Hoffman Br. at 12-14). Of course, Hoffman never appealed from the Bankruptcy Court's decision denying him leave to pursue discovery, and never raised any of the issues he argues on appeal before the Bankruptcy Court, but the result would be the same if he had. Hoffman ignores the critical data point here: fact discovery *closed* in Hoffman's case in 2000, while it was pending in the U.S. District Court for the Southern District of New York—two years prior to United's bankruptcy:

- On February 15, 2000, Magistrate Judge Theodore H. Katz of the United States District Court for the Southern District of New York entered a Scheduling Order as a docket entry in Hoffman's case, indicating (among other things) an "all pretrial discovery cutoff 4/28/00." (A43).

- On June 2, 2000, Judge Katz entered an Order to Show Cause as to why Hoffman's case should not be dismissed due to Hoffman's failure to prosecute his case and failure to comply with the Court's orders. Judge Katz noted that "All pretrial discovery in this action was to be completed by April 28, 2000." (A45)

19

- On July 19, 2000, Judge Katz entered an order setting a schedule for Hoffman to respond to United's motion for summary judgment. Judge Katz noted that "*All pretrial discovery has been completed.*" (A47)

Given these facts, there is no question that Hoffman had a full and fair opportunity to take discovery of United in the New York action prior to United's bankruptcy; that opportunity closed on April 28, 2000.

On appeal, Hoffman takes a different approach. He says that United "stymied [his] efforts several times to obtain information." (Hoffman Br. at 14). But Hoffman cites to no evidence on this point, because none exists. Next, Hoffman claims that he "informally requested information from United several times during the nearly seven-year course of litigation in this case." (*Id.* at 13). Again, there is nothing whatsoever in the record to even suggest as much. With respect to his pursuit of discovery while his case was pending, the record demonstrates nothing short of neglect by Hoffman—the same neglect that almost caused the Southern District of New York to dismiss Hoffman's case in 2000. (A45, 47-48). Despite Hoffman's newly minted appellate complaint of "obstruction," United is not in fault in any respect for Hoffman's failure to obtain information to support his claims—that is solely Hoffman's responsibility.

Judge Wedoff's ruling on this point is exactly correct. Not only did Hoffman have a full opportunity to take discovery prior to United's bankruptcy filing, but given that the facts of his case were 15 years old, and discovery had been closed for more than 6 years, it was unlikely that there was any additional discovery available to take:

> Summary judgment cannot be denied on the basis that more discovery would be appropriate. Hoffman was given a full opportunity to pursue discovery in the previous litigation, making additional discovery here inappropriate. If he was unable to discover any evidence to put this crucial fact at issue during the time when discovery was open in the New York proceeding, it is very likely unlikely he would be able to do so now, 15 years after the events in question.

20

(A88-89). Hoffman offers nothing to challenge this reasoning, nor could he. At bottom, there is no basis for deeming Judge Wedoff's refusal to reopen discovery an abuse of discretion. Hoffman's argument to the contrary should be denied.

## IV.   Hoffman's Appeals Are Also Baseless On Other Grounds.

This Court can affirm the judgment below on any ground apparent in the record. *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). A plethora of such grounds exist here. Therefore, even if the Court were to address the merits of Hoffman's underlying claim, the result is clear: Hoffman's claim was correctly disallowed on summary judgment and there is no basis for a trial here.

### A.   Hoffman Concedes His Lack of Qualifications For The Job Of Pilot.

As described above, Hoffman's underlying claim was that he had a contract in which he agreed to resign from a $7/hour job in lieu of being terminated for poor performance, and in exchange United agreed "to place Peter Hoffman into the interview process for Flight Officer." (A12, ¶ 5). Hoffman asserted that had he been considered for the job (which, Hoffman contends, was United's promise), he would have been hired. (*Id.* ¶¶ 6-7).

However, Hoffman testified under oath that he was not qualified to be a United pilot and had already been rejected for the job. In Hoffman's words: "As I knew, I didn't have sufficient experience to qualify for a job with United, American, Continental or any of the 121 carriers. There was no point i[n] my reapplying, reapplying reapplying. It would go nowhere." (A64). Accordingly, ***even if*** there was a contract to process Hoffman's pilot application (there wasn't), he would never have been hired by United anyway. That is what the Bankruptcy Court held, *see*

A87-89, and Hoffman offers no compelling reason to question that decision on the merits.[7] Therefore, even if Hoffman had demonstrated "excusable neglect" and could appeal the disallowance of his claim on the merits, this Court should reach the same result.

### B.    Hoffman's Lawsuit And Proof Of Claim Were Time-Barred.

Moreover, even if there was some merit to Hoffman's lawsuit, it was time-barred. New York has a six-year statute of limitations governing oral breach of contract claims. *See Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir. 1977). The statute of limitations begins to run at the time the contract is breached. *Bernstein v. La Rue*, 501 N.Y.S.2d 896, 898 (N.Y. App. Div. 1986). Where a contract does not provide a time for performance (as with Hoffman's alleged contract), New York courts employ a reasonableness test: "the parties have a reasonable time to perform and . . . the cause of action accrues and the statute begins to run as soon as such reasonable time has expired." *Lituchy v. Guinan Lith. Co.*, 400 N.Y.S.2d 158, 159 (N.Y. App. 1977); *Bernstein*, 501 N.Y.S.2d at 898; *Towl v. Block*, 546 N.Y.S.2d 924, 926 (N.Y. Sup. 1989). Claims brought more than six years after they accrued are time barred. *Schmidt*, 555 F.2d at 36.

Hoffman filed his Original Complaint on August 6, 1999 (*see* A16), so his claims would only be timely if United's breach had occurred on or after August 6, 1993. But any alleged breach occurred, by Hoffman's own account, far earlier. The alleged oral promise to process Hoffman's CTR and get him a pilot interview occurred in December 1992. (A17, ¶ 20). Well prior to August 6, 1993—the earliest day his claim needed to accrue for his lawsuit to be timely—Hoffman followed up with Cafiero and by words and deeds demonstrated that he believed the alleged "promises" that had been made to him had already been breached.

---

[7] Hoffman's attempts to get around his clear, dispositive deposition testimony are addressed *infra* at pages 13-15.

Specifically, on March 29, 1993, Hoffman wrote to Mr. Cafiero complaining that the paperwork "has not been done." (A28). Therefore, Hoffman clearly knew as of March 29, 1993, that he had an alleged breach of contract claim against United. Hoffman waited more than six years after alleging a breach—until August 1999—to commence his lawsuit. Therefore, Hoffman's breach of contract claims are time-barred.

Hoffman's claim is now more than 15 years old. In fact, the advanced age of Hoffman's claim is the very reason that statutes of limitations exist: to force stale claims to be raised and litigated to judgment before memories fade. Hoffman's own deposition testimony—taken in 2000—illustrates the point:

> Q: When you handed [the CTR] to [Mr. Cafiero], did you say anything?
>
> A: You're asking me to remember seven and a half years back. I can't remember what and if I said something. It's impossible. I didn't walk in there and say nothing. I just didn't hand him a document and walk out. I'm sure I had a dialogue with him, either confirming what we agreed to or saying hello or asking how his family was or talking about the job… (A30).

Having been brought more than 6 years after this alleged oral contract was purportedly breached, Hoffman's claim was clearly time-barred. Hoffman cannot pursue that claim now, some sixteen years after this alleged contract was purportedly breached.

### C.   United Policy Prohibited Hiring Hoffman As A Pilot

Even if Hoffman's CTR had been filled out and submitted by Cafiero (the promise Hoffman alleges to have been made by Cafiero), it would have gone nowhere. United policy permitted competitive transfers only for individuals; (1) who had been employed with United for more than a year; and (2) who were still employed with the company. Hoffman did not fulfill either of these prerequisites. He therefore never could have received a CTR even if Cafiero had filled out his paperwork and processed the request as Hoffman desired.

***First***, Hoffman was only a United employee for six months, and he did not successfully complete his probationary period at the company. (A59-60) United's company policies limited CTRs to those who had been with the company more than one year:

> Competitive Transfer. Employees must complete one year of service to be eligible to request transfer. Thereafter, employees may request competitive transfer after completing one year in the new job classification. (A70).

Before the Bankruptcy Court, Hoffman never challenged the existence of a United company policy prohibiting competitive transfers for employees serving less than a year. Instead, Hoffman suggested that he should have received a "waiver" from these requirements. Not so. As a threshold matter, Hoffman admitted under oath that ***he never asked for a waiver***:

> Q: Have you got any evidence, documentation or otherwise, that [Cafiero] promised to get you a waiver of the 12-month requirement?
>
> A: No, sir. (A57).

> \* \* \* \* \*

> ***Q: Did you ever ask anybody at United for a waiver of the one-year requirement?***
>
> ***A: I don't know. I don't think so.*** (A65) (emphasis added).

Moreover, had Hoffman asked Cafiero for a waiver of United's 12-month rule, the response surely would have been "no." Cafiero did not even have authority to grant a waiver of the one-year requirement—only the ability to ask his manager to issue a waiver. In fact, Cafiero had never personally granted one. (A73, A77). Cafiero repeatedly told Hoffman that he could not formally process Hoffman's CTR because of the 12-month requirement. (A75-76).

***Second***, Hoffman *resigned* from United on December 18, 1992, in lieu of being terminated. (A83). United's policies only permit the granting of CTR requests to ***actual United employees***. (A79). Once Hoffman resigned from the company, he became ineligible for a CTR

24

under any circumstances. (A79) ("Q: And would there be a way to have a waiver of the fact that he was no longer an employee? A: If there is one, I am not aware of it.").

Hoffman had no answers for any of these questions before the Bankruptcy Court, and Hoffman has presented no evidence whatsoever to overcome any of these obstacles. The bottom line is that even if Hoffman's CTR had been processed in the manner he claims that United promised him it would be processed, he would never have been hired by the company as a pilot. Hoffman's claim was properly dismissed, and none of his arguments on appeal provide any basis to challenge the disallowance of his proof of claim.

## CONCLUSION

United respectfully requests that the decisions on appeal, and the ultimate judgment disallowing Hoffman's proof of claim, be affirmed.

Dated: Chicago, Illinois
April 2, 2008

Respectfully submitted,

 / s /  Michael B. Slade
Michael B. Slade (ARDC No. 6274231)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601

Counsel for the Debtors and Debtors in Possession

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **CONSOLIDATED BRIEF OF UAL CORPORATION AND UNITED AIR LINES, INC. IN OPPOSITION TO THE APPEALS OF PETER HOFFMAN**, along with the Appendix thereto, was served via overnight mail, this 2nd day of April, 2008, upon:

Peter Hoffman

42 Walnut Street

Upton, MA  01568


    /s/   Michael B. Slade

26