**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Peter Hoffman, | ) |
| | ) |
| Appellant, | ) No. 07 CV 5612 |
| | ) |
| v. | ) |
| | ) Judge Darrah |
| UAL Corporation, | ) |
| Reorganized Debtor, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| _____ | ) |
| | ) |
| Peter Hoffman, | ) |
| | ) |
| Appellant. | ) No. 08 CV 594 |
| | ) |
| v. | ) Judge Darrah |
| | ) |
| United Air Lines, Inc., | ) |
| Reorganized Debtor. | ) |
| | ) |
| Appellee. | ) |

**APPENDIX TO CONSOLIDATED BRIEF OF UNITED AIR LINES, INC. AND UAL
CORPORATION IN OPPOSITION TO THE APPEALS OF PETER HOFFMAN**

Marc Kieselstein, P.C.
David R. Seligman
Michael B. Slade
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-3348 (tel)
(312) 861-2200 (fax)
mslade@kirkland.com

Counsel for Appellee

# TABLE OF CONTENTS

**PAGE**

The Reorganized Debtors' Forty-Seventh Omnibus Objection to Claims (No Liability, Reduce, Redundant, Reclassify) with Exhibit A, dated January 30, 2007.................................................................................A 1

Affidavit of Peter L. Hoffman with Exhibit A, dated February 13, 2007...............A 12

Reply in Support of United's Objections to Claim of Peter Hoffman, Claim 345 [Related to Docket 16538] with Exhibits A-C, dated April 3, 2007......................A 19

United's Opposition to Peter Hoffman's "Affidavit in Support of Discovery and Stay" [Related to Docket No. 16723] with Exhibits A-C, dated June 18, 2007........A 38

United's Response to Claimant Peter Hoffman's "Affidavit in Opposition to Debtor's Motion to Disallow" [Related to Docket Nos. 16622, 16688, and 16724] with Exhibits A-D, dated June 18, 2007................................................A 49

Transcript of Proceedings before the Honorable Eugene R. Wedoff, dated June 28, 2007.........................................................................….......A 84

Order Granting Additional Relief Sought in the Reorganized Debtor's Forty-Seventh Omnibus Objection to Claims [Related to Docket No. 16538], dated June 28, 2007...................................................................…...A 91

Notice of Motion for Reconsideration of the Court's June 28th, 2007 Ruling, dated July 12, 2007.......................................................................A 93

Affidavit in Support for Reconsideration of the Court's June 28th, 2007 Ruling with Exhibits A-D, dated July 12, 2007..................................................A 94

United's Opposition to Peter Hoffman's Motion for Reconsideration [Related to Docket No. 16772] with Exhibits A-B, dated July 25, 2007..............................A 110

Transcript of Proceedings before the Honorable Eugene R. Wedoff, dated July 31, 2007.......................................................................…...A 132

Order Denying Motion of Peter Hoffman to Vacate Order [Docket No. 16772],
        dated July 31, 2007..................................................................A 135

Notice of Motion for Extension of Time to File Appeal, dated July 31, 2007.........A 136

Affidavit in Support of Motion to Enlarge Time to File Appeal,
        dated July 31, 2007..................................................................A 137

United's Opposition to Peter Hoffman's Motion for an Extension of the Time to Appeal
        [Related to Docket No. 16823] with Exhibits A-B, dated
        August 24, 2007.....................................................................A 141

Transcript of Proceedings before the Honorable Pamela S. Hollis, dated September 11,
        2007..................................................................................A 155

Order Denying Peter Hoffman's Motion for an Extension of the Time to Appeal [Docket
        No. 16823], dated September 11, 2007............................................A 159

Affidavit in Support for Reconsideration of the Court's September 11th, 2007
        Ruling, dated September 18, 2007................................................A 160

United's Opposition to Peter Hoffman's Motion for Reconsideration, and United's
        Request for Sanctions [Related to Docket No. 16846] with Exhibits A-B,
        dated October 22, 2007............................................................A 164

Transcript of Proceedings before the Honorable Eugene R. Wedoff,
        dated November 6, 2007...........................................................A 183

Notice of Appeal, dated August 7, 2007.................................................A 186

Notice of Appeal, dated December 18, 2007.............................................A 188

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02 B 48191 |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date: March 1, 2007 |
| | ) | Hearing Time: 10:00 a.m. |
| | ) | Response Deadline: February 20, 2007 at 4:30 p.m. |

**THE REORGANIZED DEBTORS' FORTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY, REDUCE, REDUNDANT, RECLASSIFY)**

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors"), hereby file their Forty-Seventh Omnibus Objection to Claims (No Liability, Reduce, Redundant, Reclassify) (the "Forty-Seventh Omnibus Objection"). In support of their Forty-Seventh Omnibus Objection, the Reorganized Debtors respectfully represent as follows.

## JURISDICTION

1. This Court has jurisdiction over this Objection under 28 U.S.C. § 1334 and pursuant to the Reorganized Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "Plan") [Docket No. 14813]. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. The statutory bases for relief requested herein are 11 U.S.C. §§ 102, 105(a) and 502(b) and Federal Rule of Bankruptcy Procedure 3007.

K&E 11605754.2

## BACKGROUND

**A.    Overview of Reorganized Debtors**

3.    On December 9, 2002 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code and commenced the above-captioned Chapter 11 cases (the "Chapter 11 Cases").

4.    The Reorganized Debtors currently operate the world's second largest airline and provide air transportation, cargo, and other transportation-related-services to millions of customers each year.  The Reorganized Debtors consist of UAL Corporation ("UAL"), a Delaware corporation with its principal place of business in Elk Grove Village, Illinois, and twenty-seven wholly-owned, direct or indirect subsidiaries (collectively with UAL, "United").  UAL's principal subsidiary, United Air Lines, Inc., operates United's airline and related businesses, and UAL's other Reorganized Debtor-subsidiaries hold assets or perform activities related to the airline.

5.    On January 20, 2006, this Court entered an order confirming the Reorganized Debtors' plan of reorganization (the "Plan").  Pursuant to the Plan, this Court retains jurisdiction with respect to the Reorganized Debtors' claims objections.  The Plan became effective on February 1, 2006.

6.    To date, tens of thousands of Proofs of Claim have been filed against the Reorganized Debtors in the Chapter 11 Cases.  The Reorganized Debtors are objecting to approximately 43 Claims in this Forty-Seventh Omnibus Objection.

7.    Prior to the commencement of the Chapter 11 Cases, the Reorganized Debtors maintained in the ordinary course of their business, books and records that reflected, among other things, the Reorganized Debtors' liabilities and the amounts thereof owed to their creditors (the "Books and Records").  The Reorganized Debtors have conducted a review of the Proofs of Claim and their Books and Records.  For the reasons set forth in more detail below and based upon these

reviews, the Reorganized Debtors have determined that certain of the Claims asserted against the Reorganized Debtors in the Proofs of Claim are objectionable, and therefore the Reorganized Debtors hereby object to the allowance of those Claims.

## THE OBJECTION AND REQUEST FOR RELIEF

8. By this Forty-Seventh Omnibus Objection, the Reorganized Debtors seek disallowance, reclassification, or reduction, as appropriate, of the Claims set forth in the exhibits attached hereto or discussed herein for the reasons described in such exhibits and described herein:

a.   The Claims set forth as "No Liability" in **Exhibit A** attached hereto are Claims that are not reflected in the Reorganized Debtors' Books and Records (the "No Liability Claims");

b.   The Claims set forth as "Reduce" in **Exhibit B** attached hereto are Claims that are filed for amounts that differ from the amounts reflected in the Reorganized Debtors' Books and Records (the "Reduce Claims");

c.   The Claims set forth as "Redundant" in **Exhibit C** attached hereto are Claims that are duplicative or otherwise redundant of another Claim or Claims (the "Redundant Claims"); and

d.   The Claims set forth as "Reclassify" in **Exhibit D** attached hereto is a Claims that improperly asserts secured status because, by its own terms or on the basis of the Reorganized Debtors' books and records, such claim represent a general unsecured claim (the "Reclassify Claim").

9. The Reorganized Debtors will serve the Core Group as defined in the Fourth Amended Case Management Procedures [Docket No. 15781] (the "Case Management Order") with a copy of the generic Notice, the Forty-Seventh Omnibus Objection and Exhibits A through E attached hereto. Those parties whose Claims are being objected to pursuant to this Forty-Seventh Omnibus Objection will only receive the Forty-Seventh Omnibus Objection, and **_will not_** receive Exhibits A through E. Instead such claimants will receive a customized notice (the "Customized Notice") that will set forth their individual Claim that the Reorganized Debtors are objecting to and the basis for such objection.

### The No Liability Claims

10.     As noted above, the Reorganized Debtors have conducted a review of their Books and Records.  Based upon this review, the Reorganized Debtors have determined that certain Claims asserted against the Reorganized Debtors in the Proofs of Claim are objectionable because they are not supported by the Reorganized Debtors' Books and Records (in some instances because the obligations upon which such Claims are based have been satisfied), and the creditors have not supplied documentation that would support a Reorganized Debtor's liability to such creditors.  In other instances, the underlying litigation upon which certain No Liability Claims are based has been dismissed or otherwise resolved.  The Reorganized Debtors therefore object to the No Liability Claims listed on **Exhibit A** pursuant to Section 502(b)(1) of the Bankruptcy Code because the No Liability Claims are not enforceable against the Reorganized Debtors or their property under any agreement or applicable law.  As such, the No Liability Claims should be disallowed and expunged for all purposes.

### The Reduce Claims

11.     The Reorganized Debtors object to the Reduce Claims listed on **Exhibit B** pursuant to Sections 502(b)(1) and 507 of the Bankruptcy Code because such Claims are filed for amounts that are inconsistent with the amounts reflected on the Reorganized Debtors' Books and Records.  In evaluating the Reduce Claims, the Reorganized Debtors have thoroughly reviewed their Books and Records, the Proofs of Claim, as well as any supporting documentation provided by the claimant, and have determined that the amounts of the Claims are overstated.  Accordingly, the Reorganized Debtors object to the Reduce Claims and request that the Reduce Claims be reduced to the amounts set forth in **Exhibit B**.

**The Redundant Claims**

12.    The Reorganized Debtors object to the Redundant Claims listed on **Exhibit C** pursuant to Section 502(b)(1) of the Bankruptcy Code.  With respect to such Redundant Claims, other Proofs of Claim were filed asserting the same liabilities as those asserted by the Redundant Claims.  Because the Claims asserted by the Surviving Claims listed on **Exhibit C** will survive this Forty-Seventh Omnibus Objection and/or because the Redundant Claims are not supported by the Reorganized Debtors' Books and Records (and the Reorganized Debtors do not believe they are liable on such claims), the Redundant Claims on **Exhibit C** should be disallowed and expunged for all purposes.  The Reorganized Debtors reserve all of their rights to further object to the Surviving Claims listed on **Exhibit C** on any other grounds at any time

**The Reclassify Claim**

13.    The Reorganized Debtors object to the Reclassify Claim listed on **Exhibit D** pursuant to Section 502 of the Bankruptcy Code because such Claim not entitled to secured status under any subsection of Section 506.  The Reclassify Claim fails to provide a sufficient legal basis for secured status, does not provide any support for its assertion of security, and/or is not supported by the Reorganized Debtors' Books and Records.  Therefore, the Reclassify Claim should be reclassified as a general unsecured claim.

## SEPARATE CONTESTED MATTERS

14.    To the extent that a response is filed regarding any Claim listed in the Forty-Seventh Omnibus Objection and the Reorganized Debtors are unable to resolve the response, the Reorganized Debtors respectfully request that each such Claim and the objection by the Reorganized Debtors to each such Claim asserted in the Forty-Seventh Omnibus Objection shall constitute a separate contested matter as contemplated by Rule 9014 of the Federal Rules of

Bankruptcy Procedure. The Reorganized Debtors further request that any order entered by the Court regarding an objection asserted in the Forty-Seventh Omnibus Objection shall be deemed a separate order with respect to each Claim.

## RESPONSES TO OBJECTIONS

15.     Any party wishing to oppose the relief requested in the Forty-Seventh Omnibus Objection must file a written response with the Clerk of the Bankruptcy Court at 219 South Dearborn Street, Room 710, Chicago, Illinois, 60604, and serve a copy of the response upon (a) counsel for the Reorganized Debtors, Kirkland & Ellis, 200 East Randolph Drive, Suite 6500, Chicago, Illinois 60601 (Attn: Erik Chalut and Sienna Rakestraw) and (b) the Office of the United States Trustee, 227 West Monroe, Suite 3350, Chicago, Illinois 60606 (Attn: Kathryn M. Gleason) *so as to be received* on or before February 20, 2007, at 4:30 p.m. prevailing Central time. Only those responses timely filed with the Court and received by the above in accordance with the notice served contemporaneously herewith (the "Notice") will be considered by the Court. If a claimant does not want the Court to reduce, modify, or eliminate a Claim, the claimant must comply with the instructions in the Notice.

16.     Any response filed with the Court should contain at a minimum the following:

      a.     A caption setting forth the name of the Court, the name of the Reorganized Debtor, the case number and the title of the Forty-Seventh Omnibus Objection;

      b.     The name of the claimant and a description of the basis for the amount of the Claim;

      c.     The listed basis for the objection that was made against the claimant's Claim;

      d.     The specific factual basis and supporting legal argument upon which the claimant will rely in opposing the Forty-Seventh Omnibus Objection;

e.    Any supporting documentation, to the extent it was not included with the Proof of Claim previously submitted to the Reorganized Debtors' notice and claims agent, Poorman-Douglas, upon which the claimant will rely to support the basis for and amounts asserted in the Proof of Claim;

f.    The address to which the Reorganized Debtors must serve any reply to the response; and

g.    The name, address, and telephone number of the person (the claimant or the claimant's legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the Forty-Seventh Omnibus Objection on behalf of the claimant.

17.    If a response is properly and timely filed in accordance with the above procedures, and the Reorganized Debtors are unable to reach a consensual resolution with the claimant, the Reorganized Debtors may request the Court to conduct a hearing with respect to the objection and the response.

18.    If a claimant whose Claim is subject to the Forty-Seventh Omnibus Objection and who is served with the Forty-Seventh Omnibus Objection fails to file and serve a timely response in compliance with the foregoing procedures, the relief requested in the Forty-Seventh Omnibus Objection may be granted without further notice to the claimant.

19.    If a response contains an address for the claimant different from that stated on the Proof of Claim, the address listed in the Proof of Claim shall constitute the service address for future service of papers upon the claimant until the Reorganized Debtors receive written notice from the claimant or the claimant's counsel of a changed service address.

## REPLIES TO RESPONSES

20.     The Reorganized Debtors seek leave to, at their option, file and serve a reply to a claimant's response so that it is received by the claimant (or the claimant's counsel, if represented) no later than 2:00 p.m. prevailing central time two days prior to any hearing on the objection.

## RESERVATION OF RIGHTS

21.     The Reorganized Debtors hereby reserve the right to object in the future to any of the Claims listed in this Forty-Seventh Omnibus Objection or on the Exhibits attached hereto on any ground, and to amend, modify and/or supplement this Forty-Seventh Omnibus Objection, including, without limitation, to object to amended Claims and newly-filed Claims. Separate notice and hearing will be scheduled for any such objection.

## NOTICE

22.     The Reorganized Debtors will file and serve copies of this Forty-Seventh Omnibus Objection as described in Paragraph 10 above. In addition, any party may obtain a copy of the Forty-Seventh Omnibus Objection with all Exhibits by requesting the same from Poorman-Douglas at (877) 752-5527, at the web site of the United States Bankruptcy Court, Northern District of Illinois at http://www.ilnb.uscourts.gov (home page) or www.ilnb.uscourts.gov/chapter11/0248191.htm (the Mega Case section) or by logging onto the Reorganized Debtors' private website at http://www.pd-ual.com.

23.     The Reorganized Debtors' notice and claims agent, Poorman-Douglas, has served a copy of the Forty-Seventh Omnibus Objection and Customized Notices that summarize claim-specific detail exactly as reflected in Exhibits A through D, as the case may be, upon those claimants that have filed Claims that are affected by the Forty-Seventh Omnibus Objection, in lieu

of serving all Exhibits on each such affected claimant.  A sample Customized Notice is attached as

**Exhibit E**.

24.    The Reorganized Debtors submit that notice of this Forty-Seventh Omnibus

Objection is sufficient under Federal Rule of Bankruptcy Procedure 3007 and that no further notice

is necessary.

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an

order disallowing and expunging and/or reclassifying each of the Claims more fully described in

this Forty-Seventh Omnibus Objection and/or listed on the exhibits attached hereto.

Dated: Chicago, Illinois
      January 30, 2007

              **UAL CORPORATION, et al.**

               /s/ Erik W.Chalut
              Marc Kieselstein, P.C.  (ARDC No. 6199255)
              David R. Seligman (ARDC No. 6238064)
              Erik W. Chalut (ARDC No. 6269521)
              KIRKLAND & ELLIS LLP
              200 East Randolph Drive
              Chicago, Illinois 60601
              (312) 861-2000 (telephone)
              (312) 861-2200 (facsimile)

              Counsel for the Reorganized Debtors

**Exhibit A**

**No Liability**

**Claims to be Expunged**

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed |
|---|---|---|---|---|---|
| 437637 | 1120 AVE OF THE AMERICAS<br>ATTN: STEVEN M ROSEFSKY ESQ<br>1120 AVE OF THE AMERICAS LLC<br>100 WASHINGTON ST<br>NEWARK, NJ 07102-3024 | 42738 | 6/2/03 | 02-48210 | - (S)<br>- (A)<br>$16,152.55 (P)<br>- (U)<br>$16,152.55 (T) |
| 3829 | ACHUTHAN UDAYA KUMAR<br>C/O WINTERS ENRIGHT SALZETTA & O'BRIEN LLC<br>111 W WASHINGTON ST STE 1200<br>CHICAGO, IL 60602-3470 | 3749 | 3/28/03 | 02-48210 | - (S)<br>- (A)<br>- (P)<br>$1,000,000.00 (U)<br>$1,000,000.00 (T) |
| 61095 | BULLINGTON, MARION S<br>PO BOX 1160<br>KILAUEA, HI 96754-1160 | 42205 | 6/4/03 | 02-48210 | - (S)<br>- (A)<br>- (P)<br>$846,709.00 (U)<br>$846,709.00 (T) |
| 431255 | CENTERPOINT PROPERTIES TRUST<br>KATZ RANDALL WEINBERG & RICHMOND<br>ATTN: MICHAEL WEININGER ESQ<br>333 W WACKER DR STE 1800<br>CHICAGO, IL 60606 | 30131 | 5/5/03 | 02-48210 | - (S)<br>$67,459.00 (A)<br>- (P)<br>- (U)<br>$67,459.00 (T) |
| 436292 | COLLINS, JANE<br>ATTN: AFA COUNCIL F<br>UNITED AIRLINES CARGO CTR<br>SHOREHAM ROAD EAST HEATHROW AIRPORT<br>HOUNSLOW MIDDX TW63UA<br>ENGLAND | 39474 | 5/12/03 | 02-48210 | Unspecified* |
| 436293 | COX, LINDSAY<br>ATTN: AFA COUNCIL F<br>UNITED AIRLINES CARGO CTR<br>SHOREHAM ROAD EAST HEATHROW AIRPORT<br>HOUNSLOW MIDDX TW63UA<br>ENGLAND | 39475 | 5/12/03 | 02-48210 | Unspecified* |
| 376375 | DEPT OF IMMIGRATION, LGEA<br>CASSELDEN PLACE<br>2 LONSDALE STREET<br>MELBOURNE VIC 3000<br>AUSTRALIA | 35537 | 5/9/03 | 02-48210 | - (S)<br>- (A)<br>- (P)<br>$154,888.20 (U)<br>$154,888.20 (T) |

## Claims to be Expunged

| Creditor Number | Name/Address of Claimant | Claim Number | Date Filed | Case Number | Total Amount Claimed | |
|---|---|---|---|---|---|---|
| 129921 | ENGELSTAD, VIRGINIA CAROL<br>STOWERS WEDDLE & HENN PC<br>ATTN: GREGORY A STOWERS<br>ONE VIRGINIA AVE STE 400<br>INDIANAPOLIS, IN 46204-3616 | 8039 | 4/10/03 | 02-48210 | $250,000.00 (U)<br>$250,000.00 (T) | - (S)<br>- (A)<br>- (P) |
| 436291 | GAYLER, SYLVIA<br>ATTN: AFA COUNCIL F<br>UNITED AIRLINES CARGO CENTER<br>SHOREHAM RD EAST<br>HEATHROW AIRPORT  HOUNSLOW MIDDX TW6 3UA<br>ENGLAND | 39473 | 5/12/03 | 02-48210 | Unspecified* | |
| 463240 | GEICO<br>ATTN: NATALIE GREGG<br>1 GEICO BLVD<br>FREDERICKSBURG, VA 22412 | 45075 | 6/14/06 | 02-48191 | $1,912.10 (P)<br>- (U)<br>$1,912.10 (T) | - (S)<br>- (A) |
| 427309 | GGP ALA MOANA LLC<br>C/O MICHAEL CHIMITRIS ESQ<br>110 N WACKER DR<br>CHICAGO, IL 60606 | 42855 | 6/26/03 | 02-48210 | $5,633.69 (P)<br>- (U)<br>$5,633.69 (T) | - (S)<br>- (A) |
| 357989 | HOFFMAN, PETER<br>419 E 57TH ST #12-C<br>NEW YORK, NY 10022-3060 | 345 | 2/6/03 | 02-48210 | $2,250,000.00 (U)<br>$2,250,000.00 (T) | - (S)<br>- (A)<br>- (P) |
| 386630 | INTEGRATED SOFTWARE SPECIALISTS INC<br>ATTN MICHAEL D LOCASCIO PRESIDENT<br>1000 E WOODFIELD RD STE 102<br>SCHAUMBURG, IL 60173-4742 | 40618 | 5/13/03 | 02-48210 | $898,800.00 (U)<br>$898,800.00 (T) | - (S)<br>- (A)<br>- (P) |
| 388447 | JONES, ROBBIE H CASEY<br>ROBBIE H JONES V UNITED AIRLINES<br>ATTN: DALE A GARR<br>1600 STOUT ST STE 1000<br>DENVER, CO 80202 | 34985 | 5/9/03 | 02-48210 | $1,416,999.00 (U)<br>$1,416,999.00 (T) | - (S)<br>- (A)<br>- (P) |
| 129987 | KUAN CHEE KWONG ET AL<br>C/O WINTERS ENRIGHT SALZETTA & OBRIEN LLC<br>111 W WASHINGTON ST STE 1200<br>CHICAGO, IL 60602-3470 | 3779 | 3/28/03 | 02-48210 | $1,000,000.00 (U)<br>$1,000,000.00 (T) | - (S)<br>- (A)<br>- (P) |

A 11

UNITED STATES BANKRUPTCY COURT   Chapter 11
NORTHERN DISTRICT OF ILLINOIS

————————————————————X   Case No.   02B48191

In re:                                          :   Honorable Eugene R. Wedoff
                                                :
United Airlines, Inc.                           :   Hearing Date:      March 1, 2007
                                                :   Hearing Time:      10:00 a.m.
                                Debtor          :
                                                :   Basis for objection:   No Liability
————————————————————X

| Creditor: | Case: | Claim#: | Claim Date: | Claim Total: |
|-----------|-------|---------|-------------|--------------|
| Peter Hoffman | 02-48210 | 345 | 2/6/03 | $2,250,000.00 |

STATE OF NEW YORK       )
COUNTY OF NEW YORK      )      ss:

PETER L. HOFFMAN, being duly sworn, deposes and says:

1.  I am a creditor in the above referenced proceeding and I make this affirmation
    based on personal knowledge of the facts contained herein.

2.  I am not an attorney. I am an individual representing myself. I therefore I ask that
    I not be held to the same standards that practicing attorneys are held to.

3.  I make this affidavit in response to the Notice of Hearing on the Reorganized
    Debtors' Forty-Seventh Omnibus Objection to Claims (No Liability, Reduce,
    Redundant, Reclassify) dated January 30, 2007.

**THE FACTS**

4.  In June of 1992 United Airlines, Inc., herein the debtor, hired Peter Hoffman,
    herein the creditor, as an SOR at JFK Airport.

5.  Later in 1992, Debtor and Creditor agreed to place Peter Hoffman into the
    interview process for Flight Officer. Debtor, to date, has not met its obligation.

6.  Had Creditor been hired as a Flight Officer, he would be earning over
    $125,000.00 per year in his seventh year in that position.

7.  Creditor has been damaged by Debtor's violation of its promise to consider his
    competitive transfer request to the position of Flight Officer from Station
    Operations by over one million dollars.

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

FEB 2 0 2007

KENNETH S. GARDNER, CLERK
PS REP. - RD

A 12

8. Creditor was damaged by more than $100,000 by having sacrificed his position as SOR.

9. Creditor was damaged by more than one million dollars by debtor's failure to process his competitive transfer request to Flight Officer.

10. On October 21, 1999 a Verified Complaint (hereto attached as Exhibit A) was filed in the Supreme Court of the State of New York (Index No. 115902/99) against the Creditor for breach of contract and promissory estoppel.

11. The above matter has since been removed to the US District Court (Index No. 99Civ.11375 (GBD)).

12. On December 23, 2002 the Debtor filed a Suggestion of Bankruptcy thereby placing an automatic stay on the US District Court proceeding.

13. On January 20, 2006 this Court entered an order (the "Confirmation Order") confirming the Debtor's Second Amended Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan"), which became effective on February 1, 2006.

14. Due to the Bankruptcy Court's entry of the Confirmation Order which discharged and released United Air Lines from all Claims and Causes of Action of any nature whatsoever, and operated as an injunction against the commencement or continuation of any action, the employment or process or an act to collect, recover or offset any debt that was discharged under the plan, on March 24, 2006 the US District Court proceeding (Index No. 99Civ.11375 (GBD)) was dismissed.

15. On July 27, 2006 the Debtor's attorneys offered this Creditor a settlement offer for discussion purposes (hereto attached as Exhibit B). The offer was considered and ultimately rejected by this Creditor.

16. On September 18, 2006 this Creditor requested that this matter be placed on the Bankruptcy Court's calendar for a hearing or settlement conference. Hereto attached as Exhibit C is said request. No response other than the Notice of Hearing on the Reorganized Debtors' Forty-Seventh Omnibus Objection dated January 30, 2007 has been received.

## CLAIM/RELIEF SOUGHT

17. The Debtor is justly indebted to the Creditor for $2,250,000.00.

18. This Court has made it clear that claims, like this Creditor's, that arose before United's filing of the bankruptcy petition (so-called "pre-petition claims") may not be resolved in a forum other than the Bankruptcy Court. Specifically, a former United employee (Mr. Asmus), through counsel, sought relief in the

Bankruptcy Court that would have allowed him to proceed with his retaliation complaint "before an administrative law judge for the Occupational Health and Safety Administration" –a complaint that, like this Creditor, had been automatically stayed by the bankruptcy filing.  Transcript of March 17, 2006 Proceeding in UAL Corporation et al., No. 02-B-48191 (Bankr. N.D. Ill)., at 17 (relevant excerpt attached hereto as Exhibit D).  Chief Judge Wedoff, who is presiding over United's bankruptcy proceedings, denied Asmus' motion concluding as follows:

> As a claim arising pre-petition, and as the administrative law judge determined, Mr. Asmus' claim was subject to the automatic stay of Section 362(a)(1), and is properly treated under the provisions of the United's plan of reorganization as a pre-petition claim.

19.    WHEREFORE, I respectfully request that this Court enter an Order:

a)    That the Debtor withdraw their objection to this Creditors claim; and

b)    That Places this matter on the Court's calendar for a hearing or settlement conference on the Court's first available date; and

c)    Awarding to Creditor such other and further relief as this Court may deem just and proper.

Dated: New York, NY
       February 13, 2007

Peter Hoffman
Creditor
419 East 57th Street, #12C **
New York, NY 10022
212-794-1000

**Please note that effective February 28, 2007 the Creditor's new mailing address will be 42 Walnut Street, Upton, MA 01568-1130.

# Exhibit

# A

SUPREME COURT OF THE STATE OF NEW YORK          Index No.: 115902/99
COUNTY OF NEW YORK                              Date Summons filed 6 August 1999

PETER HOFFMAN,
                            Plaintiff,
          -against-                             VERIFIED COMPLAINT

UNITED AIRLINES, INC.,
                            Defendant.

Plaintiff, through his attorney Jeffrey McAdams, complaining of the actions of the defendant alleges:

### PRELIMINARY STATEMENT

1.   This is an action based on breach of contract and promissory estoppel arising from defendant's failure to consider plaintiff's competitive transfer request to the position of Flight Officer from Station Operations Representative (hereafter, "SOR") as stipulated, promised, and agreed in settlement of plaintiff's grievance of the extension of his probation without cause.

### THE PARTIES

2.   Plaintiff is and was at all relevant times herein a resident of the County, City, and State of New York.

3.   Upon information and belief defendant UNITED AIRLINES, INC. is a foreign corporation with an office for the transaction of business located in the County of Queens, City and State of New York.

4.   Defendant UNITED AIRLINES, INC. was at all times herein relevant an employer who employed plaintiff within the meaning of the New York State Human Rights Law and 63-290 et seq. of the New York State Executive Law.

### THE FACTS

5.   In June of 1992 defendant hired plaintiff as an SOR at JFK Airport.

6.   SORs affiliated with defendant have a six month probationary period.

7.   After plaintiff successfully completed his probation defendant attempted to extend plaintiff's probation without cause.

8.   Plaintiff protested defendant's attempt to extend his probation through defendant's grievance procedures.

9.   Plaintiff and defendant settled the grievance of defendant's extending his probation in an agreement under which plaintiff would file a competitive transfer request to the position of Flight Officer from SOR and resign his post as SOR and defendant would process plaintiff's competitive transfer request based on objective criteria excluding the controversy surrounding plaintiff's probation status.

### AS AND FOR A FIRST CAUSE OF ACTION

10.  Plaintiff repeats the allegations in ¶¶ 1 through 9 as if stated here.

NOV 06 '99 11:40 FR MAYER BROWN & PLATT   212 262 1910 TO 9    7804503#       P.03

2

11. Plaintiff filed a competitive transfer request to the position of Flight Officer in January 1993.

12. Relying on defendant's promise to process his competitive transfer request to Flight Officer if plaintiff resigned as SOR plaintiff resigned as SOR in January 1993.

13. Plaintiff was amply qualified and eligible for the position of Flight Officer with defendant in 1992 and 1993.

14. In September 1993 defendant's representative returned plaintiff's competitive transfer request to the position of Flight Officer from SOR.

15. Defendant's representative stated that defendant had not and would not follow through with its promise to process plaintiff's competitive transfer request.

16. Had defendant complied with its promise to consider plaintiff for the position of Flight Officer it would have accepted his application therefor and hired him thereat.

17. Had defendant been hired as a Flight Officer he would be earning over $125,000 per year in his seventh year in that position.

18. Defendant has been damaged by defendant's violation of its promise to consider his competitive transfer request to the position of Flight Officer from Station Operations by over one million dollars.

## AS AND FOR A SECOND CAUSE OF ACTION

19. Plaintiff repeats each and every allegation contained in ¶¶ 1 through 18 as if set forth herein.

20. In or about December 1992 plaintiff and defendant entered into an oral contract under which plaintiff would resign his position as SOR and defendant would process his competitive transfer request to the position of Flight Officer.

21. Plaintiff's position as SOR provided him with valuable consideration for his services in the form of income and opportunities for professional advancement.

22. In January 1993 plaintiff performed his side of the agreement referred to in ¶19, supra.

23. Defendant failed to performed its side of the agreement referred to in ¶18, supra.

24. Plaintiff was damaged by more than $100,000 by having sacrificed his position as SOR.

25. Plaintiff was damaged by more than one million dollars by defendant's failure to process his competitive transfer request to Flight Officer.

A 17

NOV 02 '99 11:24 AR MAYER BROWN & PLATT  212 262 1910 TO 9   7 0046530      P.04

3

### AS AND FOR A THIRD CAUSE OF ACTION

26.  Plaintiff repeats the allegations in ¶¶ 1 through 5 as if stated here.

27.  Defendant's published regulations authorize its employees to participate in bona fide local, state, federal, and private emergency organizations including but not limited to the Federal Emergency Management Agency (hereafter, "FEMA") when called.

28.  FEMA compensated workers in plaintiff's status for emergency service plus a per diem plus overtime.

29.  Plaintiff was called up to serve in FEMA on not less than two occasions in late 1992.

30.  Defendant would not excuse plaintiff for that service.

31.  Plaintiff was damaged by defendant's failure to excuse him for service with FEMA negatively impacting plaintiff's tenure at FEMA by over $150,000.

WHEREFORE plaintiff demands judgment against the defendants on the first, second, and third causes of action in the sum of $2,250,000 together with costs and disbursements of this action.

DATED:      NEW YORK, NEW YORK
            21 October 1999

to:
MAYER, BROWN, & PLATT                            Jeffrey McAdams
1675 Broadway                                    305 Broadway, Suite 600
New York, NY 10019-5820                          New York, NY 10007
212-506-2516                                     212-406-5145
Defendant's Attorney                             Plaintiff's Attorney

---

### VERIFICATION

STATE OF NEW YORK }
COUNTY OF NEW YORK } ss.:

PETER HOFFMAN swears, deposes, and says:

deponent is plaintiff herein; deponent has read the foregoing VERIFIED COMPLAINT and knows its contents

which are true to deponent's knowledge, except as to those matters stated upon information and belief, and

as to those matters deponent believes them to be true.

                                                              PETER HOFFMAN

Signed and sworn to before
me on 21 October 1999

Notary Public                          JEFFREY McADAMS
                                       Notary Public, State of New York
                                       No. 31-4983900
                                       Qualified in New York County
                                       Commission Expires April 22,   2000

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **UAL CORPORATION, et al.,** | ) | **Case No. 02-B-48191** |
| | ) | **(Jointly Administered)** |
| Reorganized Debtors. | ) | |
| | ) | **Honorable Eugene R. Wedoff** |
| | ) | **Hearing Date: April 5, 2007** |
| | ) | **Hearing Time: 10:00 a.m.** |

**REPLY IN SUPPORT OF UNITED'S OBJECTION TO CLAIM OF PETER HOFFMAN,**
**Claim 345 [Related to Docket 16538]**

Peter Hoffman resigned from United in 1992.  Almost seven years later, in 1999, Mr.

Hoffman filed a lawsuit in New York, alleging that United breached an oral contract to make

him a pilot.  Prior to United's bankruptcy petition, discovery had been taken, and United's

summary judgment motion was fully briefed but not ruled upon.  Mr. Hoffman filed a proof of

claim for a staggering and baseless $2.25 million based on his pre-petition suit.

Mr. Hoffman's proof of claim should be expunged.  As demonstrated in United's fully

briefed summary judgment motion that was pending at the time United filed its bankruptcy

petition, United has two dispositive defenses which Mr. Hoffman cannot overcome:

- *The statute of limitations*.  Under New York law the statute of limitations on oral contract claims is six years.  Mr. Hoffman waited longer than six years after his claim accrued to file his lawsuit.  His lawsuit and claim are therefore time-barred.

- *The facts*.  There is no evidence whatsoever that United representatives could, or did, promise Mr. Hoffman employment as a pilot -- indeed such an alleged promise is preposterous given Mr. Hoffman's lack of qualifications for the job.

Therefore, United asks that the Court sustain its objection to Mr. Hoffman's claim and order it

expunged.  In the alternative, given that fact discovery was complete prior to United's

bankruptcy petition, United suggests that the Court schedule a prompt hearing on the matter to

establish liability (or, more likely, the lack thereof). United is confident that no liability exists and therefore a damages phase will be unnecessary.

**BACKGROUND**

Peter Hoffman was a United Stations Operations Representative ("SOR") at JFK International Airport from June 15, 1992 until he resigned on December 18, 1992. SOR was a non-union, non-management position subject to a six month probationary period. Mr. Hoffman's administrative supervisor was Robert Cafiero, Supervisor of Ramp Services. On December 18, 1992, Cafiero notified Mr. Hoffman that his six-month probationary period had ended unsuccessfully and advised him to resign in lieu of being fired. Accordingly, Mr. Hoffman tendered his written resignation, effective January 4, 1993.

**I.      The Competitive Transfer Request**

On December 18, 1992, the day of his resignation, Mr. Hoffman also gave Mr. Cafiero a Competitive Transfer Request ("CTR") for a Flight Officer (pilot) position. UAL policy permitted employees who had completed at least one year of service to request a competitive transfer to another job classification by completing and submitting a CTR form to their supervisor, who would complete other information on the form and forward it for further processing. Included in the CTR paperwork submitted by Mr. Hoffman was a stamped UAL "Dear Flight Officer Candidate" return postcard that United would send to applicants acknowledging receipt of an application. Mr. Cafiero accepted the CTR and told Mr. Hoffman that he would informally submit it to flight operations for review. Since Mr. Hoffman did not complete the requisite probationary period, however, he was not eligible for a competitive transfer to Flight Officer or any other position in the Company.

Mr. Hoffman's last day as a UAL employee was January 2, 1993. Five days later, on January 7, 1993, Mr. Cafiero walked Mr. Hoffman's CTR form down the hall to flight operations

2

for their informal review, as he said he would.  Mr. Hoffman waited a month or two, then called

Mr. Cafiero to check on the status of his application.  On March 29, 1993, Mr. Hoffman wrote

Cafiero a note asserting a breach of promise:

> Bob: I phoned you at home out of desperation.  You have promised, since Dec, to
> complete and forward my flight officer application.  Needless to say, it has <u>not</u>
> been done.  I can not proceed until it has been forwarded.  I understand you are
> busy.  <u>Please</u> process it ASAP.  Thank you.  Peter (Exhibit A)

## II.    Mr. Hoffman's Litigation Against United

On August 6, 1999 -- more than six years after first alleging breach of an alleged promise

-- Mr. Hoffman filed a complaint in the Supreme Court of the State of New York for breach of

contract and promissory estoppel arising from United's purported failure to consider his CTR to

the position of Flight Officer.  Mr. Hoffman alleged that "[h]ad [United] complied with its

promise to consider [Mr. Hoffman] for the position of Flight Officer it would have accepted his

application therefore and hired him thereas."  (Compl. ¶ 1)[1]  Mr. Hoffman alleged that he and

Cafiero had entered into an oral contract under which Hoffman would resign his position as SOR

and Cafiero would process his CTR to the position of Flight Officer.  (*Id.* ¶ 9)  Mr. Hoffman also

alleged that United improperly failed to excuse him from his Federal Emergency Management

Agency ("FEMA") duties.

United removed the case to the U.S. District Court for the Southern District of New York.

Both Hoffman and Cafiero were deposed, other discovery was also taken, and United filed a

motion for summary judgment on August 3, 2000.  On October 17, 2000, Mr. Hoffman filed his

opposition to summary judgment.  The matter was not ruled upon prior to December 9, 2002,

and was thereafter stayed by United's entry into bankruptcy.

---

[1] Hoffman's Complaint is attached as Exhibit A to his opposition brief.

3

### III.    Mr. Hoffman's Proof of Claim

Mr. Hoffman's Proof of Claim No. 345 (the "Claim") was received on February 13, 2003. In support of the Claim, Mr. Hoffman attached his Complaint. United filed an objection to Mr. Hoffman's Proof of Claim on January 30, 2007. Mr. Hoffman's response to the Claims Objection similarly attached his Complaint and renewed his demand for $2,250,000.

### ARGUMENT

### I.    Hoffman's Claims Against United Are Barred By The Statute of Limitations

New York has a six-year statute of limitations governing breach of contract and breach of promise claims.[2] *See Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir. 1977). The statute of limitations begins to run at the time the contract is breached. *Bernstein v. La Rue*, 501 N.Y.S.2d 896, 898 (N.Y. App. Div. 1986). Where a contract does not provide a time for performance, New York courts employ a reasonableness test: "the parties have a reasonable time to perform and . . . the cause of action accrues and the statute begins to run as soon as such reasonable time has expired." *Lituchy v. Guinan Lithographic Co.*, 400 N.Y.S.2d 158, 159 (N.Y. App. 1977); *Bernstein*, 501 N.Y.S.2d at 898; *Towl v. Block*, 546 N.Y.S.2d 924, 926 (N.Y. Sup. Ct. 1989).

Mr. Hoffman filed his Original Complaint on August 6, 1999, so his claims would be timely if United's breach had occurred on or after August 6, 1993. But any alleged breach occurred, by Hoffman's own account, far earlier. The alleged oral promise occurred on December 18, 1992. Well prior to August 6, 1993 -- the earliest day his claim needed to accrue for his lawsuit to be timely -- Mr. Hoffman followed up with Mr. Cafiero and by words and

---

[2]    The third cause of action, that United failed to excuse Mr. Hoffman for service with FEMA (an unclear claim at best), by definition accrued no later than January 2, 1993, Mr. Hoffman's last day of employment. NY CPLR § 213(1) provides that where no limitations period is specifically prescribed, an action must be commenced within six years. Thus, the FEMA action is unequivocally time-barred because it occurred more than six years before the date of the Original Complaint.

deeds demonstrated that he believed the alleged "promises" that had been made to him had already been breached. On March 29, 1993, Mr. Hoffman wrote to Mr. Cafiero complaining that his transfer "has not been done." (Ex. A, Letter) Mr. Hoffman clearly knew as of March 1993 that he had an alleged claim against United. Yet Mr. Hoffman waited more than six years -- until August 1999 -- to commence his lawsuit. Therefore, any claims are time-barred.

## II.    Mr. Hoffman Has No Legitimate Claim Against United

Even if Mr. Hoffman's claims were timely, his admissions make clear that none of them have merit. Thus, based on the undisputed facts in the record and as a matter of law, Hoffman's claims cannot succeed, and his proof of claim should be expunged.

### A.    Breach of Contract

The elements of a cause of action for breach of contract are (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages caused by the breach. *Blue Water Env't, Inc. v. Inc. Vill. of Bayville*, 824 N.Y.S.2d 752 (N.Y. Sup. Ct. 2006). Mr. Hoffman claims that he had an "agreement" that he would resign his position as SOR; in exchange Mr. Cafiero would process Mr. Hoffman's CTR and, somehow, make him a pilot.

Mr. Hoffman's claims are first doomed by the fact that he cannot remember what was said by either himself or Mr. Cafiero to create the alleged oral contract. Mr. Hoffman was questioned repeatedly regarding the contents of the oral agreement and each time Mr. Hoffman responded that he did not know:

Q: When you handed [the CTR] to [Cafiero], did you say anything?

A: You're asking me to remember seven and a half years back. I can't remember what and if I said something. It's impossible. I didn't walk in there and say nothing. I just didn't hand him a document and walk out. I'm sure I had a dialogue with him, either confirming what we agreed to or saying hello or asking how his family was or talking about the job...

Q: How many copies [of the CTR] did you give?

A: I believe one.

Q: And what did he do or say when you gave it to him?

A: I can only give you concepts or paraphrase, I can't give you words...I can't tell you what he said.

Ex. B, Hoffman Depo. at 10-11.

On the other hand, United representative Cafiero does remember what he said to Mr. Hoffman when he received the CTR from Hoffman. Mr. Cafiero specifically remembers telling Mr. Hoffman that he could not forward the request formally because Mr. Hoffman did not meet the eligibility requirements for a CTR. *See* Ex. C, Cafiero Depo. at 7-8. Instead, Mr. Cafiero told Mr. Hoffman that he would give the CTR to the flight operations department for review. *Id.* Thereafter, Mr. Cafiero *did* submit the CTR to flight operations for informal review -- exactly as he told Hoffman he would. *Id.* at 23. Mr. Hoffman's naked assertion that he received a promise for official processing of the CTR (a "promise" that would have been flatly in violation of Company policy), coupled with Mr. Cafiero's clear recall that told Mr. Hoffman he would simply take the CTR down the hall for unofficial review leaves no room for a reasonable fact finder to conclude that a contract ever existed, was breached, or caused any damages at all. Hence, Mr. Hoffman has no cause of action for breach of contract.

**B.    Promissory Estoppel**

A cause of action for promissory estoppel arises when there is a ***clear*** and ***unambiguous*** promise, reasonable and foreseeable reliance by the promisee, and an injury as a result of such reliance. *See Ripple's of Clearview, Inc. v. Le Havre Assoc.*, 452 N.Y.W.2d 447, 449 (N.Y. App. Div. 1982). Mr. Hoffman cannot meet these elements and thus may not sustain a claim based on promissory estoppel. First, as described above, the record lacks any evidence of a clear

6

A 24

representation by Mr. Cafiero that he would formally process Mr. Hoffman's request. *See Fenton v. Fenton*, 678 N.Y.S.2d 358, 359 (N.Y. App. Div. 1998) (an injured party's unreasonable reliance on an ambiguous representation does not create a cause of action based on promissory estoppel).

Moreover, Mr. Hoffman cannot establish a promissory estoppel claim because any reliance on the alleged representation would not have been reasonable. Mr. Hoffman admitted in deposition that his departure from United was involuntary -- he did not successfully complete his probationary period. Ex. B, Hoffman Depo. at 27. As a result, Mr. Hoffman would have left United in the absence of the CTR request. Further, Mr. Hoffman knew from personal experience that he ***could not obtain the job of Flight Officer*** as an outsider (non-employee) because he had previously tried unsuccessfully. *Id.* at 79. Any reliance on a purported promise that he would become a Flight Officer after termination based any statements made by Mr. Cafiero was wholly unreasonable.

The bottom line is that United did not make or breach any promise to Mr. Hoffman. Accordingly, the Claim should be denied

### CONCLUSION

United respectfully requests that Mr. Hoffman's claim be expunged in its entirety because it is both barred by limitations and baseless on the merits. In the alternative, because liability-based discovery is complete, United requests that the Court schedule a prompt, and brief, hearing on liability only -- bifurcating the case and leaving any damages issues for later. At a liability hearing, only two witnesses would need to testify (Hoffman and Cafiero), and they have both already been deposed. If liability is established, than the parties could proceed to any necessary damages phase.

Dated: Chicago, Illinois
      April 3, 2007

                                        Respectfully submitted,

                                         / s /  Michael B. Slade
                                        Marc Kieselstein, P.C. (ARDC No. 6199255)
                                        David R. Seligman (ARDC No. 6238064)
                                        Michael B. Slade (ARDC No. 6274231)
                                        KIRKLAND & ELLIS LLP
                                        200 East Randolph Drive
                                        Chicago, Illinois 60601

                                        Counsel for the Reorganized Debtors

8

**A 26**

# EXHIBIT A

3/29/93

BOB:

   I phoned you AT HOME out
OF desperation.

   You have promised, since Dec,
To complete AND FORWARD MY
FLIGHT OFFICER APPLICATION.
Needless To say, iT HAS NOT Been
done.

   I CAN NOT Proceed until
iT HAS been forwarded.

   I understand you ARE Busy.
Please process iT ASAP.

      THANK you

      Pete

EXHIBIT
DX-6
3/29/00

F 11

A 28

# EXHIBIT B

1

2       Q.      Were you still a United employee at the

3  time?

4       A.      Yes.

5       Q.      What was your last day as a United

6  employee?

7       A.      I believe January 2, '93.

8       Q.      Yet at the moment you're not sure whether

9  you were handing this to him on your last day?

10      A.      Oh, I'm positive it was not on my last

11  day.  It was not on my last day.  That's certain.

12      Q.      What makes you positive about that?

13      A.      Because I recall the events.  I don't

14  remember the answers to your questions, but I do

15  recall the general sequence of events.

16      Q.      When you handed it to him, did you say

17  anything?

18      A.      You're asking me to remember seven and a

19  half years back.  I can't remember what and if I

20  said something.  It's impossible.  I didn't walk in

21  there and say nothing.  I just didn't hand him a

22  document and walk out.

23          I'm sure I had a dialogue with him,

24  either confirming what we agreed to or saying hello

25  or asking how his family was or talking about the

1                              Hoffman                    11

2      job.  I'm sure I didn't just walk in there like a

3      robot and say nothing.

4          Q.    How many copies did you give?

5          A.    I believe one.

6          Q.    And what did he do or say when you gave

7      it to him?

8          A.    I can only give you concepts or

9      paraphrase, I can't give you words.

10         Q.    Sir, you're a witness under oath.  Answer

11     the questions.  Nobody is here for concepts.

12         A.    I can't tell you what he said.

13         Q.    The date on the request is December

14     18, '92.  I gather you did not, however, hand it to

15     Mr. Cafiero on that date?

16         A.    I don't know.

17         Q.    Well, what explains the lag between the

18     date on the document and submitting it, giving it to

19     Mr. Cafiero?

20         A.    I didn't say there was.  I said there was

21     a period of time from late December through early

22     January I gave it to him.  I didn't say it was the

23     18th, I didn't say it was the 22nd.  I didn't say it

24     was the 31st.  I can't tell you.

25              If you want the truth, I've given you as

1                           Hoffman                    27

2          Q.      You weren't instructed on that in your

3    orientation meeting?

4          A.      I don't believe so.

5          Q.      You weren't instructed either on the

6    transfer procedures in your initial orientation?

7          A.      You're asking questions I just don't know

8    the answer to.  I don't know.  I don't know.  It's

9    too long.  If you want honest answers, I just

10   couldn't give you a more straight answer than that

11   certainly.

12         Q.      Was your termination voluntary or

13   involuntary?

14         A.      Involuntary.

15         Q.      Did you complain about your termination

16   to anybody?

17         A.      I did.

18         Q.      To whom?

19         A.      Bob Cafiero.

20         Q.      When did you do that?

21         A.      At the time he told me.

22         Q.      When was that?

23         A.      Late December on the date of my

24   termination, which was somewhere after 18 December,

25   I believe.

Hoffman                                    79

advantageous to apply for a pilot position as a

United employee rather than as a non-United

employee?

    A.    I think that those that make the hiring

decisions would prefer an employee than a

non-employee if he or she is being considered as an

employee or insider or as a candidate.

    Q.    That's all you think of in response to

this question?

    A.    I think of a variety of things but I

think that's most on point.

    Q.    Have you applied to airlines other than

United for a pilot position?

    A.    Prior to but not subsequent to my United

Airlines application.

    Q.    What other airlines were those?

    A.    I don't remember.  Perhaps Continental,

perhaps American.  At least one of the majors.  I

learned quickly that I didn't have the skill, hours

or experience to qualify for a job in any other way

than the one that we've contemplated.  That idea was

sprung by talking to one of the colleagues --

colleagues is the wrong word -- one of the

management at United.

# EXHIBIT C

                              Hoffman                      7

1

2      A.      Station operations representative.

3      Q.      Do you remember that he was hired at

4  approximately the same time as Peter Hoffman?

5      A.      I couldn't say.  To my recollection, he

6  transferred in from Los Angeles, as I recall, same

7  -- time frame, I can't give you.

8      Q.      And how long was he working as an SOR?

9      A.      Again, I --

10     Q.      At Kennedy?

11     A.      I can't tell you.

12     Q.      Do you remember Brenda Rosen?

13     A.      No.

14     Q.      Do you remember discussing with Peter

15  Hoffman extending his probation?

16     A.      No, I do not.

17     Q.      Do you remember discussing with Peter

18  Hoffman terminating his employment as an SOR?

19     A.      I remember it happening, the details of

20  which I would be hard-pressed to give you.

21     Q.      Do you remember agreeing with Peter

22  Hoffman to process his competitive transfer request?

23     A.      After listening to the deposition given

24  by Mr. Hoffman, some thoughts came back to me

25  regarding his competitive transfer request.

Hoffman                                    8

1              Peter and I did discuss it.  I mentioned

2    to Peter that I could not forward this to Chicago

3    formally because of the 12-month, but I would give

4    it to flight operations for review, knowing that

5    they were always looking for people in that

6    department in an intern or administrative capacity.

7        Q.    Do you remember that when you discussed

8    that with Peter Hoffman he agreed with you that he

9    would resign from his position and you would rescind

10   a termination?

11       A.    If you are asking me if we would accept

12   his resignation in lieu of my firing him, I don't

13   recall the exact details, but the evidence that I've

14   seen in the records indicate that that's what took

15   place.

16       Q.    Does this sort of jog your memory that

17   you recall that that happened?

18       A.    Judging from the review of the records,

19   yes.

20       Q.    And was that under an agreement that you

21   would process his competitive transfer request and

22   he would resign?

23       A.    I don't recall that.

24       Q.    Do you recall when the competitive

Hoffman                    23

1

2    twice.  The individuals involved, I don't recall.

3        Q.    But do you recall whether they were on

4    probation at the time?

5        A.    They wouldn't have been.

6        Q.    So if you had no intention of filing his

7    competitive transfer request, why did you fill it

8    out?

9        A.    To close the file.

10       Q.    To close the file?

11       A.    Yes.  And I also promised -- on here

12   you'll notice that there's a dependability review

13   that needed to be filled out, and as promised, I

14   told Peter that I would discuss his case or his

15   employment with flight operations, which I did.  I

16   made that promise to Peter and that's what I did.

17       Q.    And you don't know whatever became of

18   that from flight operations?

19       A.    No, I do not.

20            MR. McADAMS:  I would like to step

21       outside just to talk for a second.

22            (Pause)

23       Q.    Do you remember Mr. Hoffman ever asking

24   you to be released for FEMA service?

25       A.    Yes.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | **Case No. 02-B-48191** |
| **UAL CORPORATION, et al.,** | ) | **(Jointly Administered)** |
| | ) | |
| Reorganized Debtors. | ) | **Honorable Eugene R. Wedoff** |
| | ) | **Hearing Date: June 26, 2007** |
| | | **Hearing Time:  9:30 a.m.** |

**UNITED'S OPPOSITION TO PETER HOFFMAN'S "AFFIDAVIT IN SUPPORT OF
DISCOVERY AND STAY" [RELATED TO DOCKET NO. 16723]**

On May 17, this Court ordered briefing on the merits of Peter Hoffman's proof of claim. The Court asked Hoffman to provide support for his assertion that had his request for Competitive Transfer Request (CTR) been processed, he would have become a United pilot. (5/17/07 Tr. at 9)  Rather than provide any substantive evidence in the time provided — Hoffman's effort was both untimely and woefully insufficient — Hoffman filed an "Affidavit in Support of Discovery and Stay," seeking additional discovery and stalling his day of reckoning until he secures that discovery.  Hoffman noticed this "Affidavit" for hearing two days *before* the hearing set by the Court on United's substantive objection to Hoffman's claim.

During the May 17 hearing, Hoffman asked for additional discovery to support his claim. As United noted, however, fact discovery *closed* in Hoffman's case while it was pending in the U.S. District Court for the Southern District of New York prior to United's bankruptcy.  The Court correctly noted that "[i]f you had wanted discovery, the discovery would have been taken in connection with the nonbankruptcy proceeding." (5/17/07 Tr. at 10).  The Court told Hoffman that he could ask to reopen discovery, but given that the facts of this case occurred fifteen years ago and "based on the fact that discovery closed prior to the time this bankruptcy was filed, I don't think I'm likely to grant that request." (*Id.* at 11).

A 38

Remarkably, Hoffman now claims that he has "no record of an order being handed down concluding that discovery was complete." (Docket No. 16723, Motion, ¶ 8) That statement, made under oath, is quite hard to believe given that:

- On February 15, 2000, Magistrate Judge Theodore H. Katz of the United States District Court for the Southern District of New York entered a Scheduling Order as a docket entry in Hoffman's case, indicating (among other things) an "all pretrial discovery cutoff 4/28/00." (*See* Exhibit A)

- On June 2, 2000, Judge Katz entered an Order to Show Cause as to why Hoffman's case should not be dismissed due to Hoffman's failure to prosecute his case and failure to comply with the Court's scheduling order. Judge Katz noted that "All pretrial discovery in this action was to be completed by April 28, 2000." (*See* Exhibit B)

- On July 19, 2000, Judge Katz entered an order setting a schedule for Hoffman to respond to United's motion for summary judgment. Judge Katz noted that "***All pretrial discovery has been completed.***" (*See* Exhibit C)

Hoffman participated in the New York proceedings, at times represented by counsel, and at times *pro se*. In addition, this information is all publicly available, and Hoffman should have been aware of it. There is no question that Hoffman had a full and fair opportunity to take discovery of United in the New York action prior to United's bankruptcy filing, and that opportunity closed on April 28, 2000.

After Hoffman filed his "Affidavit," United brought these orders to Hoffman's attention. After reviewing them, Hoffman agreed to either withdraw or modify his request in light of the fact that fact discovery clearly closed prior to United's bankruptcy, contrary to the premise of Hoffman's motion. Regardless of what Hoffman does to "modify" his motion, there is no basis whatsoever for any further discovery by Hoffman in this matter, and his request should be denied.

2

**A 39**

Dated: Chicago, Illinois
      June 18, 2007

                            Respectfully submitted,

                             /s/   Michael B. Slade
                            Marc Kieselstein (ARDC No. 6199255)
                            David R. Seligman (ARDC No. 6238064)
                            Michael B. Slade (ARDC No. 6274231)
                            KIRKLAND & ELLIS LLP
                            200 East Randolph Drive
                            Chicago, Illinois 60601

                            Counsel for the Reorganized Debtors

3

**A 40**

# EXHIBIT A

**1:99-cv-11375-GBD-THK** Hoffman v. United Air Lines
George B. Daniels, presiding
Theodore H. Katz, referral
**Date filed:** 11/16/1999
**Date terminated:** 03/24/2006 **Date of last filing:** 03/24/2006

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| -- | *Filed:*<br>*Entered:* | 11/16/1999<br>11/18/1999 | Case Information |
| | *Docket Text:* Magistrate Judge Katz is so Designated. (bm) | | |
| 1 | *Filed:*<br>*Entered:* | 11/16/1999<br>11/18/1999 | Notice of Removal |
| | *Docket Text:* NOTICE OF REMOVAL from Supreme State Court County of New York; State Court Case # 115902-99; FILING FEE $ 150.00 RECEIPT # 359604. (bm) | | |
| 2 | *Filed:*<br>*Entered:* | 11/16/1999<br>11/18/1999 | Rule 1.9 Certificate |
| | *Docket Text:* RULE 1.9 CERTIFICATE filed by United Air Lines . (bm) | | |
| 3 | *Filed:*<br>*Entered:* | 11/24/1999<br>12/01/1999 | Answer to Complaint |
| | *Docket Text:* ANSWER to Complaint by United Air Lines (Attorney Eric Rosenfeld from the Firm: Seyfarth, Shaw, Fairweather & Geraldson). (kw) | | |
| 4 | *Filed:*<br>*Entered:* | 12/10/1999<br>12/13/1999 | Order for Initial Pretrial Conference |
| | *Docket Text:* Order setting pre-trial conference for the purposes of discussing settlement, motions, discovery schedule, and setting a date for trial; Pretrial conference set for 9:30 12/23/99 ( signed by Judge William H. Pauley III ) (lam) | | |
| 5 | *Filed:*<br>*Entered:*<br>*Terminated:* | 12/21/1999<br>12/27/1999<br>01/12/2000 | Motion to Remand |
| | *Docket Text:* NOTICE OF MOTION by Peter Hoffman for an order remanding this matter to the NY County Supreme Court for the State of NY ; affidavit of Peter Hoffman in support is attached; Return date 1/7/00. (kw) Modified on 12/27/1999 | | |
| 6 | *Filed:*<br>*Entered:* | 12/21/1999<br>12/27/1999 | Memorandum of Law in Support of Motion |
| | *Docket Text:* MEMORANDUM OF LAW by Peter Hoffman in support of [5-1] motion for an order remanding this matter to the NY County Supreme Court for the State of NY. (kw) | | |
| 7 | *Filed:*<br>*Entered:* | 12/22/1999<br>12/27/1999 | Scheduling Order |
| | *Docket Text:* SCHEDULING ORDER: plaintiff shall serve and file his motion for remand by 12/20/99; defendant shall serve and file any opposition by 12/27/99; plaintiff shall serve and file his reply by 1/4/00; oral argument shall be held on 1/7/00 at 10:30 a.m. ( signed by Judge | | |

| | | | |
|---|---|---|---|
| | William H. Pauley III ); Copies mailed. (kw) | | |
| 8 | *Filed:* | 12/27/1999 | Affidavit in Opposition to Motion |
| | *Entered:* | 12/28/1999 | |
| | *Docket Text:* AFFIDAVIT of Eric Rosenfeld by United Air Lines in opposition to Re: [5-1] motion for an order remanding this matter to the NY County Supreme Court for the State of NY. (kw) | | |
| 9 | *Filed:* | 12/27/1999 | Memorandum of Law in Opposition to Motion |
| | *Entered:* | 12/28/1999 | |
| | *Docket Text:* MEMORANDUM OF LAW by United Air Lines in opposition to [5-1] motion for an order remanding this matter to the NY County Supreme Court for the State of NY. (kw) | | |
| 10 | *Filed:* | 01/05/2000 | Reply Memorandum of Law |
| | *Entered:* | 01/06/2000 | |
| | *Docket Text:* REPLY MEMORANDUM by Peter Hoffman to opposition to pltff's [5-1] motion for an order remanding this matter to the NY County Supreme Court for the State of NY (lam) | | |
| 11 | *Filed:* | 01/05/2000 | Reply Affidavit in Support of Motion |
| | *Entered:* | 01/06/2000 | |
| | *Docket Text:* Reply affidavit of Jeffrey McAdams, atty for Peter Hoffman in support of [5-1] motion for an order remanding this matter to the NY County Supreme Court for the State of NY (lam) | | |
| -- | *Filed:* | 01/07/2000 | Oral Argument Hearing |
| | *Entered:* | 01/12/2000 | |
| | *Docket Text:* Oral argument held before Judge William H. Pauley III (lam) | | |
| 12 | *Filed:* | 01/12/2000 | Order |
| | *Entered:* | 01/13/2000 | |
| | *Docket Text:* ORDER, denying pltff's [5-1] motion to remand this matter to the NY County Supreme Court for the State of NY ( signed by Judge William H. Pauley III ); Copies mailed by Chambers. (lam) | | |
| 13 | *Filed:* | 01/12/2000 | Order Referring Case to Magistrate Judge |
| | *Entered:* | 01/13/2000 | |
| | *Docket Text:* Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for general pretrial/including initial case management conference. ( signed by Judge William H. Pauley III ) Referred to Magistrate Judge Theodore H. Katz. (kw) | | |
| -- | *Filed:* | 02/14/2000 | Pretrial Conference - Initial |
| | *Entered:* | 02/16/2000 | |
| | *Docket Text:* Pretrial Conference held before Magistrate Judge Theodore H. Katz. (djc) | | |
| 14 | *Filed:* | 02/15/2000 | Scheduling Order |
| | *Entered:* | 02/16/2000 | |
| | *Docket Text:* SCHEDULING ORDER: there shall be no further amendments of the pleadings or new parties added unless good cause can be shown; all pretrial discovery cutoff 4/28/00; if there are no dispositive motions, a joint pretrial order shall be submitted by 5/26/00 ( signed by Magistrate Judge Theodore H. Katz ); Copies mailed. (lam) | | |
| 15 | *Filed & Entered:* | 03/02/2000 | Transcript |
| | *Docket Text:* Transcript of record of proceedings before Judge William H. Pauley III for the date (s) of 1/7/00 @11:25am. (lam) | | |

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
PETER HOFFMAN,                    :
                                  :
                    Plaintiff,    :
                                  : 99 Civ. 11375 (GBD)(THK)
        -against-                 :
                                  :
                                  : ORDER TO SHOW CAUSE
UNITED AIRLINES,                  :
                                  :
                                  :
                    Defendant.    :
---------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

All pretrial discovery in this action was to be completed by April 28, 2000 and a Joint Pretrial Order was to be submitted by no later than May 26, 2000. See Order, dated February 15, 2000. No Joint Pretrial Order has been submitted. Moreover, plaintiff's counsel has failed to respond to several telephone inquiries by the Court.

Accordingly, it is hereby ordered that plaintiff shall have until June 12, 2000 to show cause why this action should not be dismissed with prejudice, for failure to comply with the Court's Scheduling Order and for failure to prosecute the case.

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:    June 1, 2000
          New York, New York

*Copies Mailed to Counsel of Record 6/2/00*

JUN 05 2000

A 45

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PETER HOFFMAN,                       :
                                     :
                Plaintiff,           :
                                     :
        -against-                    :  99 Civ. 11375 (GBD)(THK)
                                     :
                                     :
UNITED AIRLINES,                     :         ORDER
                                     :
                                     :
                                     :
                Defendant.           :
------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This case was referred to me for general pretrial supervision. All pretrial discovery has been completed. A Joint Pretrial Order was to be submitted by no later than May 26, 2000. When no Joint Pretrial Order was submitted and plaintiff's counsel failed to respond to the Court's inquiries, the Court ordered plaintiff to show cause why this action should not be dismissed with prejudice for failure to comply with the Court's Scheduling Order and for failure to prosecute the case. See Order, dated June 2, 2000. Plaintiff's counsel submitted an affidavit in response to the Order. The Court then held a telephonic conference with the parties on July 18, 2000. At the conference, the Court ruled that because of the clear preference for resolving cases on the merits, and because defendant sought to move for summary judgment, the case would not be dismissed for failure to prosecute. Accordingly, defendant's proposed motion for summary judgment shall be submitted to the Honorable George B. Daniels, in accordance with the schedule

*Copies Mailed to Counsel of Record* 7/19/00