Current Commercial Certificate with Single Engine Land rating
Current Private Certificate with Single Engine Sea rating
Instrument rating
Qualified to and had flown some 15 different models of civilian aircraft
Flown less common simulators (L-1011 (at approx age 13), DC-10 & F-4)
Four year College degree (Electrical and Computer Engineering Degree)
US Citizen

My total flight time was over 650 hours with more ratings than required (listed above). I met or exceeded the requirements of UAL. Hereto attached as Exhibit D are two pages from my Pilot Log book which are provided as evidence of my experience during the period in question.

**NOTE**
**Airline Pilot (Source: Professional Pilot, June 2004) (Excerpt)**

Major airlines, the companies that are most highly desired and attract the most competitive candidates, will require in the neighborhood of 1,500 to 3,000 flight time hours and approximately 300 to 500 hours of multiengine time for application acceptance. Although these represent the basic minimum hiring standards, the applicant truly needs more than just the bare essentials to have a chance at the cockpit.

Additionally, a four-year college degree is virtually a must because more than 80 percent of pilots interviewed had at least a four-year degree. An airline pilot certificate (ATP) is almost a necessity based on the fact that 88 percent of pilot candidates held that certificate. [PLEASE NOTE THAT THERE ARE 12 PERCENT WHO DO NOT MEET THIS GROUP].

It should be mentioned that the airlines tend to require the FAA first class medical certificate because all hires must aspire to the captain's position.

Airline pilots serving as captain and pilot in command must have earned a first class medical certificate with the strictest medical standards applied.

**NOTE (Source: Conversations that Capt. Al Venskus and I had in 1992).**

The Chief Pilot (1992) of UAL at the JFK base, Capt. Al Venskus, hired in the 1960's (when the airline was in great need of pilots) was hired with some 60 total hours and ONLY a Private Pilot certificate. I bring this up now, in part because I just thought of it and in part because I need to prove that I am indeed qualified and show any example that I can think of that might be helpful to make my point compelling. In this and many other writings above, I would try to further buttress these arguments if I could. The court has denied further discovery so I am limited in the scope of research that I can perform.

**NOTE**

As mentioned in earlier writings, I met Capt. Ed Methot in the early 1990's. Capt Methot, at the time, was the VP of Operations. Capt Methot was most clear, when we met in 1992 that my qualifications were well within the UAL hiring standard. I relied, it seems perhaps to my detriment, on the representations made by Capt Methot.

# CONCLUSION

The court found on June 28th, 2007 that I "offered no evidence at all to support this assertion" (that I would have been hired to be a pilot). While I am far from a professional litigator, I now realize that I made many errors in my previous presentation. I hope that I have both corrected these errors and omissions as well as painted a far clearer picture of why I believe that UAL not only could have hired me as a Pilot but would have.

While, I have no proof of the following, it should be noted that another individual was hired at approximately the same time period. This individual had some half of some of my qualifications. This individual, I understand to be a female, had some 300 total flying hours (half of my flying time). It would be highly unlikely that due to her limited number of hours, while possible, that she had more ratings or certificates than I had. As I am not entitled to further discovery, unless the Court permits further discovery, my hands are tied and I am unable to prove this allegation. If true, it would seem highly difficult to argue that I was not qualified not that I would not have been hired, let alone qualified.

The totality of my experience, education and background makes me a much more viable Pilot candidate, not simply my total flight, for example.

It is my understanding that there are many questions of fact surrounding the central issue of whether I was qualified to become a UAL Pilot as an employee (not with another airline nor with UAL as a non employee). I believe (and hope that the court feels the same way) that I have raised many facts that are in dispute and should cause this claim to be allowed (summary judgment not to be granted to the Debtor).

I claim, and UAL has NOT ever refuted, particularly with any evidence or proof, that the requirement that UAL was guided by during the period in question was one that does show that I did not meet the Pilot hiring requirements with the status of internal or employee. One must note that any standards that were in place are conspicuously absent (not provided by UAL in any of their previous writings). I, on the other hand, have now provided an lengthy outline of standards that UAL was guided by as well as my qualifications with evidence to support my statements (see para a, b & g).

In the event that the Court does not rule in my favor, I ask that brief oral argument be permitted so to allow me to clarify what I may not have outlined well enough in these papers.

8

THEREFORE, I respectfully request that this Court enter an Order:

    a.    Vacating the order handed down on June 28, 2007; and

    b.    Denying the Debtor's objection to this Creditor's claim; and

    c.    Permitting limited further discovery; and

    d.    Permitting the matter to proceed to a status conference or as the Court sees fit; and

    e.    Awarding to Creditor such other and further relief as this Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 12, 2007

Peter Hoffman
Creditor
42 Walnut Street
Upton, MA 01568
212-794-1000
Fax-794-1919

Sworn to before me on _____ 17th _____ day of July 2007.

Notary Public

SANDRA BADILLO
NOTARY PUBLIC, N.Y. STATE
NO. 01BA6056427
QUALIFIED IN BRONX COUNTY
COMM EXPIRES MARCH 28, 2011

A 101

# Exhibit A





# Exhibit B

12



# Exhibit C

14

**COMPETITIVE TRANSFER REQUEST**

See Regulations 15-4 & 19-8.

AFTER COMPLETION ROUTE ENTIRE FORM

to EXORB

UNITED

EXHIBIT
Di c

**EMPLOYEE DATA**

HOFFMAN, P. L.          131R17      6 / 15 / 96     2 5 3       3 E X 0 0

FLIGHT OFFICER      /9 0 1 0

M   U   L

SUPERVISOR/MANAGER                     12/18/96

GMRS          0   0   0

E. H. Caferna       631-9210                      1/17/96

# Exhibit D

16

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re:                                          )    **Chapter 11**
                                                )    **Case No. 02-B-48191**
**UAL CORPORATION, et al.,**                    )    **(Jointly Administered)**
                                                )
            **Reorganized Debtors.**            )    **Honorable Eugene R. Wedoff**
                                                )    **Hearing Date: July 31, 2007**
                                                )    **Hearing Time: 10:00 a.m.**

## UNITED'S OPPOSITION TO PETER HOFFMAN'S MOTION FOR RECONSIDERATION [RELATED TO DOCKET NO. 16772]

Peter Hoffman has moved to reconsider the Court's July 2, 2007 Order disallowing his proof of claim. Hoffman's motion is baseless, and must be summarily denied, for three reasons:

- ***First***, Hoffman's motion is untimely. In fact, Hoffman's motion for reconsideration was filed after his time to appeal the Court's Order had already expired. This Court's Order disallowing Hoffman's claim is already <u>final</u>.

- ***Second***, Hoffman's motion is merely a re-hash of arguments he made, or clearly could have made, before final judgment was entered. Therefore, Hoffman's proffer does not come even close to meeting the standards for reconsideration.

- ***Third***, even if this Court considered the merits of Hoffman's claim again, Hoffman's hearsay-laden brief cannot overcome his deposition admission that he "didn't have sufficient experience" to be qualified to become a United pilot.

*First*, the Court's Order disallowing Hoffman's claim is already final. Hoffman had 10 days from entry of the order to file a notice of appeal or a motion for reconsideration that would toll his appeal deadline. *See* 28 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002; Fed. R. Bankr. P. 9023; Fed. R. Civ. P. 59(e). Here, the Court's order disallowing Hoffman's proof of claim was entered June 28, 2007, and was docketed on July 2, 2007. (Docket No. 16758).[1] Hoffman's

---

[1] Hoffman may claim that weekends and July 4 do not count for purposes of the 10-day notice period. If so, Hoffman is wrong. Bankruptcy Rule 9006 permits the exclusion of non-business days only when the applicable deadline is 8 days or less. Since Bankruptcy Rule 8002 permits 10 days to appeal, non-business days count for time purposes, and the deadline was July 12, 2007. Hoffman's brief was not filed until July 20, 2007.

right to appeal the Court's Order ended when he failed to do so on or before July 12, 2007. The failure to timely file notice of appeal invalidates any appeal Hoffman might file later. *See In re Drevlow*, 221 B.R. 767, 768 (8th Cir. BAP 1998) ("[Bankruptcy] Rule 8001 is exceptionally clear. While failure to take any step other than filing a timely notice of appeal does not render the appeal invalid, the timely filing of a notice of appeal is both 'mandatory and jurisdictional.'"); *In re Bond*, 254 F.3d 669, 673 (7th Cir. 2001) (reversing district court decision because notice of appeal from bankruptcy court order was untimely) ("In order to perfect the appeal (and provide the district court with jurisdiction), the party must file a notice of appeal with the clerk of the bankruptcy court within 10 days of the bankruptcy court's decision.").[2]

Hoffman cannot circumvent the finality of this Court's judgment by moving for reconsideration — such a maneuver would be too cute by half. *See, e.g, Weir v. Propst*, 915 F.2d 283, 285 (7th Cir. 1990) ("the time limits in section 1292(b) may not be circumvented by the facile device of asking for reconsideration of the order sought to be appealed under that section"). And while he is *pro se*, Hoffman cannot claim surprise, or unfairness, at the fact that he has missed the deadline and thus his claim is now dead. Indeed, after disallowing Hoffman's proof of claim, ***this Court specifically warned Hoffman*** to file within 10 days:

---

[2] *See also In re Enron Corp.*, No. 02 Civ. 5638(BSJ), 2003 U.S. Dist. LEXIS 1442 at *10 (S.D.N.Y. Feb 3, 2003) ("The time period for filing a notice of appeal [in a bankruptcy case] is strictly enforced and failure to timely file deprives the district court of jurisdiction to review the bankruptcy court's order."); *In re New York Int'l Hostel*, 194 B.R. 313, 316 (S.D.N.Y. 1996) ("[A] failure to timely file the notice of appeal deprives the District Court of jurisdiction to review the Bankruptcy Court's order."); *Pellulo v. Sunbank/Miami, NA*, No. Civ-A 97-2052, 1997 WL 260207, at *2 (E.D. Pa. May 13, 1997) ("Appellant filed his notices of appeal on February 19, 1997, one day after the deadline for both the summary judgment order and the order denying his motion for reconsideration. Therefore, his appeals were untimely filed under the ten-day deadline of Bankruptcy Rule 8002(a) as computed by Bankruptcy Rule 9006(a)."); *Sheridan Broad. Corp. v. Sound Radio, Inc.*, 109 F.3d 873, 879 (3d Cir. 1997) ("This deadline is strictly construed. The failure to file a timely notice of appeal creates a jurisdictional defect barring appellate review.").

[THE COURT]:  Mr. Hoffman, you'll have a right to appeal that will begin running as soon as the order is docketed, so you'll want to check, if you do wish to pursue appeal, to find out when that docketing takes place.  I believe you have ten days thereafter to file a notice of appeal in the district court.

[Hoffman]:  Understood.  Your Honor, can I ask a question or two?

[THE COURT]:  At this point I don't think that would be necessary, but go ahead.

[Hoffman]:  Would you permit me to make a motion to reargue because the court may have missed something in its ruling on —

[THE COURT]:  You have rights, Mr. Hoffman, to seek my review under Bankruptcy Rule 9023 or 9024.  You might want to check those out.

Ex. A, 6/28/07 Tr. at 6.

Neither Bankruptcy Rule 3008 nor 11 U.S.C. § 502(j) suffice to reinstate Hoffman's now-stale claim.  As the Northern District of Illinois has held:

> [A] Rule 3008 motion, like a 9023 motion, will terminate the time limit for filing a notice of appeal only if it is timely filed under Fed. R. Civ. P. 59(e) and 5(d). . . .
>
> The advisory committee note to Rule 3008 . . . recognizes that one can lose the right to appeal from a final order even though one still has a right to file a Rule 3008 motion for reconsideration.  . . . [Otherwise, n]o one would know when a bankruptcy case was finally decided.  Appeals could be taken three, six, even ten months after a final judgment had been entered. The time of appealability, having jurisdictional consequences, should above all be clear.  Courts and litigants are best served by [a] bright-line rule.

*In re Opelika Mfg. Corp.*, 94 B.R. 484, 487 & nn. 6-7 (N.D. Ill. 1997).  At best, Rule 3008 and Section 502(j) would permit Hoffman to invoke Federal Rule 60(b) and its narrow categories for relief, none of which (as described below) Hoffman fits within.  *See In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) ("We interpret Rule 9024 to provide that, when a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration

3

of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim."); *In re Jones*, 233 B.R. 176 (10th Cir. BAP 1998) (unpublished opinion) (same).

*Second*, even were it timely, Hoffman's motion for reconsideration consists solely of belated "evidence" relating to his purported qualifications for a pilot job at United.  This Court gave Hoffman multiple opportunities to present such "evidence" — in reply briefs, surreply briefs, and even sur-surreply briefs — *prior to judgment*.  Hoffman's attempt to reinvent the wheel now is a complete abuse of the motion for reconsideration:  having neglected to provide evidence before judgment, Hoffman cannot try to add some through "reconsideration."  While *newly discovered evidence* (something Hoffman does not claim) might provide a basis for reconsideration, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nat'l de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see also Oto v. Met. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (motion for reconsideration which "merely took umbrage with the court's ruling and rehashed old arguments" inappropriate). It is well-settled that evidence available, but not introduced, prior to judgment *cannot be considered* at all on a motion for reconsideration.  *See, e.g., In re Farley, Inc.*, 211 B.R. 889 (Bankr. N.D. Ill. 1997) ("Previously discoverable and available evidence may not be admitted or considered in the context of a motion for reconsideration.") (citing *King v. Cooke*, 26 F.3d 720 (7th Cir. 1994)).

*Third*, Hoffman's post-judgment evidentiary proffer (every piece of which was in Hoffman's possession before judgment) is woefully insufficient to change the result here. Hoffman's "evidence" primarily consists of documents and a "flight log" which demonstrates, at

4

best, that he had medical certificates and a commercial pilot certificate, along with 650 hours of flight time, in 1992. That is entirely irrelevant. There is no evidence whatsoever that these "qualifications" were sufficient to get a job as a pilot at United in 1992. In fact, Hoffman's brief also confirms that, according to the hearsay source Hoffman himself proffers as evidence, those qualifications were not sufficient. In Hoffman's words:

> "Major airlines, the companies that are most highly desired and attract the most competitive candidates, will require in the neighborhood of *1,500 to 3,000 flight time hours* and approximately 300 to 500 hours of multiengine time . . . [as] the basic minimum hiring standards, [and] the applicant truly needs to have more than just the bare essentials to have a chance at the cockpit." (Hoffman Br., at 6) (emphasis added).

Hoffman — by his own admission — doesn't even come close to the qualifications his undisclosed hearsay source provides. That must be why, under oath at deposition, Hoffman specifically testified that he "*didn't have sufficient experience to qualify for a job with United, American, Continental or any of the [Part]121 carriers.*" (Ex. B, Hoffman Dep., at 80) (emphasis added)[3]

Even before summary judgment (let alone *after* judgment), Hoffman could not get around this deposition admission by proffering hearsay-by-affidavit. Rather, because they contradict his deposition testimony, Hoffman's "sworn" written statements must as a matter of law be disregarded. *See Kaplan v. City of Chicago*, 2004 WL 2496462, at *2 (N.D. Ill. 2004) ("Where a deposition and an affidavit are in conflict, the affidavit is to be disregarded and the court should only consider the deposition.") (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001)); *see Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (same); *Buttron v.*

---

[3] "Part 121" is the set of federal regulations governing commercial airlines such as United. 14 CFR Part 121.

*Sheehan*, 2003 WL 2180112, at *4 (N.D. Ill. 2003) (affidavit entitled to "zero weight" when contradicted by deposition testimony) (citing *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002)).

In addition, while the Court should not consider Hoffman's belated evidentiary proffer, the hearsay Hoffman cites to is underwhelming at best. Hoffman only identifies: (a) his own personal opinion about what United's "requirements" for pilots were in 1992 (Hoffman Br. at 6); (b) an alleged conversation concerning what United's requirements allegedly were when a chief pilot was hired "in the 1960's (when the airline was in great need of pilots)" (*id.*); (c) a story Hoffman concedes to "have no proof of" (Br. at 7) about a woman purportedly being hired with less flying hours than Hoffman; and (d) a vague alleged statement by a United captain that Hoffman has never mentioned before.[4] But at bottom, Hoffman's statement under oath that he lacked the qualifications to be a pilot at United is dispositive; Hoffman cannot get around that statement through a belated motion for reconsideration.[5]

Finally, Bankruptcy Rule 9024 — the only potential avenue realistically open to Hoffman here — would not allow for relief even *if* his allegations were correct. Rule 9024 (which incorporates Federal Rule of Civil Procedure 60), allows for relief from a final judgment only in

---

[4] Hoffman now also says that in the early 1990s, he met a United pilot, Captain Methot, who told him that his qualifications met the UAL hiring standard. (Hoffman Br. at 7) There is no indication in the record, at all, that Captain Methot had any idea what Hoffman's "qualifications" even were. In addition, Hoffman has never made this assertion before, in the New York action or in the bankruptcy action, so the veracity of these post-judgment allegations is clearly subject to question. Regardless, it directly conflicts with Hoffman's deposition testimony that he was *not* qualified, which is the only thing that matters.

[5] Hoffman's story now appears different than his litigation theory before judgment. Prior to judgment, Hoffman claimed that the standards were different depending on whether he applied for a pilot job from outside of United (a standard he did not meet) or inside of United (a standard he alleged, but introduced no evidence to prove, that he did meet). Now, Hoffman appears to claim that there was only one standard for pilot jobs at United, which he met. If that were true, Hoffman would have received a job when he applied for a job as a United pilot *outside* the context of his alleged "contract." He did not. (Ex. C, Hoffman Dep. at 77)

case of mistake, surprise, excusable neglect, or "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)," along with other bases plainly inapplicable here. Fed. R. Civ. P. 60(b). The "evidence" added by Hoffman was not newly discovered, and there was neither mistake nor surprise afoot here. Rule 60(b) does *not* excuse Hoffman's failure to present evidence prior to judgment after this Court specifically directed him to do so; his conduct was perhaps neglect, but not "excusable" neglect. *See, e.g., Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (Rule 60(b) cannot give relief from "inexcusable carelessness"); *Rogers v. Wood*, 910 F.2d 444, 449 (7th Cir. 1990) ("[N]egligent mistake, evincing a lack of due care, is not a proper ground for relief under Rule 60(b)."); *Sadowski v. Bombardier Ltd.,* 539 F.2d 615, 618 (7th Cir. 1976) ("Rule 60(b) is not to be invoked to give relief to a party who has chosen a course of action which in retrospect appears unfortunate or where error or miscalculation is traceable really to a lack of care."); *Sears, Sucsy & Co. v. Ins. Co. of N.A.*, 392 F. Supp. 398, 416 (N.D. Ill. 1976) ("[I]t is not a ground for relief that a party failed to present to the court on a motion for summary judgment all the facts known to him and that might have been useful to the court."); *Bell Tel. Labs v. Hughes Aircraft Co.*, 73 F.R.D. 16, 21 (D. Del. 1976) (when "the decision not to defend, or not to introduce certain evidence, was made consciously, on the basis of full knowledge of the issues involved, the party cannot claim mistake, inadvertence, surprise, or excusable neglect").

For the reasons described herein, this Court should deny Peter Hoffman's motion for reconsideration.[6]

---

[6] In addition, in prior briefings, United offered several other reasons why Hoffman's proof of claim could not succeed as a matter of law because he never could have been transferred to United's pilot core. *See, e.g.,* Docket No. 16622, 16728. The Court did not rule on any of these because it deemed Hoffman's lack of qualifications sufficient to disallow his claim, but they would provide additional and plainly sufficient bases to disallow the claim even were Hoffman "qualified" (which he was and is not).

7

**A 116**

Dated: Chicago, Illinois
      July 25, 2007

Respectfully submitted,


  / s /  Michael B. Slade
Marc Kieselstein (ARDC No. 6199255)
David R. Seligman (ARDC No. 6238064)
Michael B. Slade (ARDC No. 6274231)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601


Counsel for the Debtors and Debtors in Possession

8

# EXHIBIT A

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


In re:                         )
                               )  No. 02 B 48191
UAL CORP., et al.,             )
                               )  Chicago, Illinois
                               )  June 28, 2007
                   Debtor.     )  10:00 a.m.


TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE EUGENE R. WEDOFF


APPEARANCES:

MR. MIKE SLADE
on behalf of United;

MS. ELLEN YEARWOOD
on behalf of Leon Ramsey.



ALSO PRESENT:

MR. PETER HOFFMAN (TELEPHONICALLY).

Page 2

1            THE CLERK:  UAL Corporation, 02 B 48191.

2            THE COURT:  Okay.  Let's take up

3 Mr. Hoffman's matter first.

4                 Would you state your appearance,

5 Mr. Hoffman.

6            MR. HOFFMAN:  Peter Hoffman, Your Honor.

7            THE COURT:  Okay.

8            MR. SLADE:  Your Honor, Mike Slade for

9 United.

10            THE COURT:  Okay.  I have a ruling to

11 read into the record.  This matter is before the

12 court, claim number 345 of Peter Hoffman, on

13 United's objection.  Mr. Hoffman's claim is based on

14 damages arising from an alleged failure by United to

15 process his Competitive Transfer Review, or CTR, to

16 become a pilot in violation of an alleged oral

17 contract.  Hoffman alleges that, had the CTR been

18 processed, United would have hired him as a pilot.

19 Hoffman brought this claim in New York state court

20 in 1999 and United removed it to federal district

21 court.  The parties completed discovery, as

22 reflected in the case's docket report and two orders

23 of the magistrate judge presiding over the case.

24 United moved for summary judgment.  However, before

25 judgment could be rendered, United filed for

Page 3

1 bankruptcy and Hoffman filed his claim as a creditor

2 of the estate.  United objects to the claim on two

3 grounds.  First, United argues that New York's

4 statute of limitations bars this claim.  Second,

5 United argues that Hoffman's claim fails on its

6 merits.

7               At an earlier hearing, this court

8 rejected United's statute of limitations argument

9 and instructed the parties to address the merits.

10 United filed a motion for reconsideration of its

11 statute of limitations defense and both parties

12 submitted arguments regarding the merits.  Both

13 motions are now ready for ruling.

14               United's motion for reconsideration

15 will be denied.  As discussed on the record on

16 May 17, 2007, United had a reasonable amount of time

17 to complete the alleged oral contract, and the

18 statute of limitations did not begin running until

19 after that reasonable time period ended.  Again, as

20 previously discussed, the length of that reasonable

21 period is a question of fact under New York law.

22               On the merits, however, United's

23 objection will be sustained and the claim will be

24 disallowed.  By objecting to the claim under Section

25 502(b) of the Bankruptcy Code, Title 11 U.S.C.,

1 United instituted a contested matter is adjudicated

2 in accordance with Rule 9014 of the Federal Rules of

3 Bankruptcy Procedure.  Rule 9014(c) applies to

4 contested matters the provisions of Bankruptcy Rule

5 7056, which, in turn, incorporates Rule 56 of the

6 Federal Rules of Civil Procedure.  Summary judgment

7 is thus available in the claims adjudication

8 process.

9          Accordingly, the legal standard to

10 be applied is whether there is any genuine issue as

11 to any material fact such that this matter should be

12 set for trial.  In order to prevail, Hoffman must

13 establish that he would have been hired as a pilot

14 had the CTR been processed.  This is a material

15 fact.  See Fishman versus Teter, 133 F.2d 222,

16 Seventh Circuit, 1943, defining a material fact as

17 one that a party must establish in order to prevail.

18          A genuine issue as to this material

19 fact would exist if there were sufficient evidence

20 favoring Hoffman for a jury to return a verdict in

21 his favor.  Anderson versus Liberty Lobby, Inc., 477

22 U.S. 242, 1986.  Because Hoffman has offered no

23 evidence to support this fact, summary judgment is

24 appropriate.  Save Our Cemeteries, Inc. versus

25 Archdiocese of New Orleans, Inc., 548 F.2d 1074,

1 1077, Fifth Circuit, 1978.

2　　　　　To support its contention that

3 Hoffman would not have been hired as a pilot, even

4 had the CTR been processed, United offered Hoffman's

5 own admission that he was not qualified to be a

6 pilot and that his application for that position had

7 been rejected by other major airlines.  In response,

8 Hoffman claims that he would have been hired through

9 the CTR process in spite of his lack of

10 qualification, but Hoffman offers no evidence at all

11 to support this assertion.  The only evidence before

12 the court is that Hoffman is not qualified to be a

13 pilot, and the only reasonable conclusion is that he

14 would not have been hired as a pilot even had the

15 CTR been processed.

16　　　　　Furthermore, summary judgment cannot

17 be denied on the basis that more discovery would be

18 appropriate.  Hoffman was given a full opportunity

19 to pursue discovery in the previous litigation,

20 making additional discovery here inappropriate.  If

21 he was unable to discover any evidence to put this

22 crucial fact at issue during the time when discovery

23 was open in the New York proceeding, it is very

24 unlikely he would be able to do so now, 15 years

25 after the events in question.  United's objection to

Page 6

1 this claim will therefore be sustained and the claim

2 disallowed in its entirety.

3          MR. SLADE:  Thank you, Judge.  Do you

4 need a separate order from us or are you just going

5 to -- okay.  We'll get that to Ms. William.

6          THE COURT:  Okay.  Mr. Hoffman, you'll

7 have a right to appeal that will begin running as

8 soon as the order is docketed, so you'll want to

9 check, if you do wish to pursue appeal, to find out

10 when that docketing takes place.  I believe you have

11 ten days thereafter to file a notice of appeal in

12 the district court.

13          MR. HOFFMAN:  Understood.  Your Honor,

14 can I ask a question or two?

15          THE COURT:  At this point I don't think

16 that would be necessary, but go ahead.

17          MR. HOFFMAN:  Would you permit me to make

18 a motion to reargue because the court may have

19 missed something in its ruling on --

20          THE COURT:  You have rights, Mr. Hoffman,

21 to seek my review under Bankruptcy Rule 9023 or

22 9024.  You might want to check those out.

23          MR. HOFFMAN:  Okay.  And I think, Your

24 Honor, you might have missed something in my papers

25 that --

Page 7

1              THE COURT:  Well, that's what 9023 and

2 9024 are designed to address.

3              MR. HOFFMAN:  It seems, Your Honor, that

4 you read this from notes or something.  Is it

5 possible for me to get a copy of what you read?

6              THE COURT:  Yes.  You can talk with the

7 court reporter to get a transcript.

8              MR. HOFFMAN:  Would I be able -- that's a

9 little bit cumbersome.  Would it be possible to just

10 ask your courtroom deputy to provide me a copy of

11 what you read --

12             THE COURT:  No, that's not possible.  You

13 need to contact the court reporter.  The deputy

14 doesn't have access to the transcript.

15             MR. HOFFMAN:  And what you've read is not

16 available to --

17             THE COURT:  It is available through the

18 court reporter.

19             MR. HOFFMAN:  Okay.

20             THE COURT:  Okay.

21             MR. HOFFMAN:  All right.  Very well.

22             THE COURT:  Okay.

23             MR. HOFFMAN:  Thank you very much.

24             THE COURT:  Now, there are other matters

25 on the call today.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x

PETER HOFFMAN,

        Plaintiff,

    v.

                  99 Civ 1375 (WHP)(THK)

UNITED AIR LINES, INC.

        Defendant.

- - - - - - - - - - - - - - - - - - - -x

                  March 29, 2000
                  11:00 a.m.

        Deposition of PETER HOFFMAN, taken by
defendant, at the offices of Seyfarth Shaw
Fairweather & Geraldson, 1270 Avenue of the
Americas, New York, N.Y. 10020; before Joseph B.
Pirozzi, a Registered Professional Reporter and
Notary Public of the State of New York.

Hoffman                                    77

1

2    meaning what jobs did you apply for?

3        A.    The only one -- I didn't apply for any

4    because I wasn't given the opportunity to apply for

5    any.  There were no positions available.

6             I attempted to get a similar position at

7    LaGuardia and I also looked into the possibility of

8    becoming a cook, I think it's called, in an off-site

9    facility near Kennedy, I think.

10       Q.    Before coming to work for United you had

11   previously applied for a pilot position at United,

12   had you not?

13       A.    I think so.

14       Q.    How many different applications had you

15   submitted?

16       A.    I guess one.

17       Q.    What year was that?

18       A.    I think sometime before -- what year?

19   Good question.  1990, for argument sake.

20       Q.    And how far down into the process had you

21   gotten with that?  Had you completed the application

22   for flight officer, a form?

23       A.    I believe so.

24       Q.    Did you get to the interview stage?

25       A.    No.  No.

Hoffman                                        78

1

2      Q.   What made you think you were going to --

3   you had any chance of getting to the interview stage

4   using the other route, even if you had been employed

5   for 12 months as an SOR?

6      A.   Talking to numerous people before I was

7   employed, let alone after I was employed.  The idea

8   actually was not sprung by me to do this.  I didn't

9   think it was.  I met --

10      Q.   Are you speaking about the idea of

11   getting another job at United so as to become

12   eligible for the competitive transfer process?  Is

13   that what you are talking about?

14      A.   I'm talking about being employed with

15   United is better than not being employed with United

16   if I'm trying to get a pilot's job as an employee.

17      Q.   Why is that?

18      A.   Logic would dictate that that would be

19   the case.

20      Q.   Why?

21      A.   Bear with me for just a moment.

22          You were starting to ask about the

23   evolution of this idea of becoming an employee and

24   then applying for the pilot job.

25      Q.   That's not the question.  Why was it more

Hoffman                              79

2   advantageous to apply for a pilot position as a

3   United employee rather than as a non-United

4   employee?

5       A.      I think that those that make the hiring

6   decisions would prefer an employee than a

7   non-employee if he or she is being considered as an

8   employee or insider or as a candidate.

9       Q.      That's all you think of in response to

10  this question?

11      A.      I think of a variety of things but I

12  think that's most on point.

13      Q.      Have you applied to airlines other than

14  United for a pilot position?

15      A.      Prior to but not subsequent to my United

16  Airlines application.

17      Q.      What other airlines were those?

18      A.      I don't remember.  Perhaps Continental,

19  perhaps American.  At least one of the majors.  I

20  learned quickly that I didn't have the skill, hours

21  or experience to qualify for a job in any other way

22  than the one that we've contemplated.  That idea was

23  sprung by talking to one of the colleagues --

24  colleagues is the wrong word -- one of the

25  management at United.

1                                        Hoffman                        80

2            As I knew, I didn't have sufficient

3 experience to qualify for a job with United,

4 American, Continental or any of the 121 carriers.

5 There was no point if my reapplying, reapplying

6 reapplying.  It would go nowhere.

7            However, as I met a variety of senior

8 executives, including Edward Mathot, captain, flight

9 domicile operations director, having had met him he

10 said the way you can, aside from becoming a flight

11 instructor and/or flying with the commuters, get a

12 job, if you qualify, as far as the pilot corps is

13 concerned, and he encouraged me to do this, was to

14 get a job with United Airlines and then make the

15 request to transfer.  That's where this idea came

16 from.

17            That was my motive for being in this job.

18 Being paid $7 an hour was not my favorite choice.

19 That's why I indicated to you that being worked more

20 than part time was problematic to me because I had a

21 whole other life that I had to attend to, and I was

22 hired part time to complete my duties and eventually

23 transfer.

24      Q.      You said Captain Mathot?

25      A.      Yes.

07_31_07 Hearing Transcript.txt

```
0001
 1              IN THE UNITED STATES BANKRUPTCY COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION
 3
 4    UAL CORPORATION,              )  No. 02 B 48191
                                    )  Chicago, Illinois
 5                                  )  10:00 a.m.
                           Debtor.  )  July 31, 2007
 6
 7
 8           TRANSCRIPT OF PROCEEDINGS BEFORE THE
                  HONORABLE EUGENE R. WEDOFF
 9
10    APPEARANCES:
11    For the Debtor:          Mr. Michael Slade;
                               Mr. Erik Chalut;
12                             Mr. Alex Karan;
                               Mr. Paul Collier;
13
      For Ronald Katz:         Ms. Cathy Hershcopf;
14                             Mr. John Graves;
15    For Leon Ramsey:         Ms. Ellen Yearwood;
16    For UMB:                 Mr. James Johnston;
17    For RAIC:                Mr. David Golin;
18    Appearing Telephonically:
19    Pro se:                  Mr. Peter Hoffman;
20    For UMB:                 Mr. Kirk Dillman;
21    For Mark Sassman:        Mr. Richard Darst;
22    For City of Los Angeles: Mr. Walter Oetzell;
23
      Court Reporter:          Amy Doolin, CSR, RPR
24                             U.S. Courthouse
                               219 South Dearborn
25                             Room 661
                               Chicago, IL  60604.
0002
 1              THE CLERK:  UAL Corporation,
 2    02 B 48191.
 3              THE COURT:  Can I have the appearances
 4    by telephone for anyone who wishes to enter an
 5    appearance.
 6              MR. DILLMAN:  Your Honor, this is Kirk
 7    Dillman of Hennigan Bennett & Dorman in the UMB
 8    matters.
 9              THE COURT:  Okay.  Mr. Dillman, I will
10    be expecting to hear from you a little later in the
11    call.
12              MR. OETZELL:  Good morning, Your
13    Honor.  Walter Oetzell, Danning Gill Diamond &
14    Kollitz on behalf of the 03, the 05 matter -- no,
15    excuse me, the 06 matter, although I don't believe
16    that's at issue.
17              THE COURT:  Okay.  Thank you, Mr.
18    Oetzell.
19              MR. HOFFMAN:  Okay.  I'll try again,
20    Your Honor.  Peter Hoffman, Your Honor, good morning,
21    in case 345 or claim number 345.
22              THE COURT:  Okay, next.
23              (No response.)
24              THE COURT:  I know there was someone
25    else that wanted to enter an appearance.
0003
```

Page 1

07_31_07 Hearing Transcript.txt

```
 1            MR. DARST:  This is Richard Darst.
 2  I'm the attorney for Mark Sassman.
 3            THE COURT:  Okay.  Then the
 4  appearances in the courtroom.
 5            Mr. Slade.
 6            MR. SLADE:  Your Honor, Mike Slade on
 7  behalf of United.
 8            THE COURT:  All right.  The first
 9  matter on the call is I believe a motion for
10  reconsideration by Mr. Hoffman.  I have a ruling to
11  read into the record in that connection.
12            As I mentioned, the matter is before
13  the court on a motion for reconsideration of an order
14  disallowing the claim of Peter Hoffman.  Bankruptcy
15  courts have the power to reconsider the allowance or
16  disallowance of proofs of claim for cause.  11 USC
17  Section 502(j) Bankruptcy Rule 3008.
18            After ten days have elapsed from the
19  entry of an order allowing or disallowing a claim,
20  courts generally apply the standards of Bankruptcy
21  Rule 9024, which incorporate Federal Rule of Civil
22  Procedure 60(b) when determining whether cause exists
23  to reconsider.  Colley v. National Bank of Texas, 814
24  F.2d 1008, 1010, Fifth Circuit 1987.
25            This is particularly true where the
0004
 1  proof of claim was actually contested rather than
 2  simply deemed allowed.  In re Gomez, 250 B.R. 397,
 3  401, Bankruptcy Court for the Middle District of
 4  Florida, 1999.  Even a court that looks to the
 5  totality of circumstances has held that Rule 60
 6  provides "significant guidance" as to what
 7  constitutes cause under Section 502(j).  In re
 8  Willoughby, 324 B.R. 66, 73-74, Bankruptcy Court for
 9  the Southern District of Indiana, 2005.
10            The standards for reconsideration set
11  out in Rule 60(b) are thus applicable to the present
12  motion to reconsider.  Relief under Rule 60 is an
13  extraordinary remedy and is granted only in
14  exceptional circumstances.  McCormick v. City of
15  Chicago, 230 F.3d. 319, 327, Seventh Circuit, 2000.
16            Mr. Hoffman has offered no new
17  evidence that was not available prior to judgment.
18  He simply contends in his motion for reconsideration
19  that the court erred and that its ruling was
20  incorrect.
21            However, the final order was not
22  correct.  Put simply, it was Mr. Hoffman's burden to
23  establish that he would have been hired by United had
24  an application that he sought to have submitted were
25  actually submitted.  He failed to offer any evidence
0005
 1  that would reasonably have supported that conclusion.
 2            His belief that he could find such
 3  evidence if given a further opportunity to do so does
 4  not justify denial of summary judgment.  The time for
 5  him to have developed the evidence to support his
 6  assertion was during the time of discovery.
 7  Discovery is closed and has been closed for years.
 8  On this basis the motion for reconsideration will be
 9  denied.
10            MR. SLADE:  Thank you, Judge.  Would
11  you like me to submit an order?
```

Page 2

07_31_07 Hearing Transcript.txt

12          MR. HOFFMAN:  Thank you, Your Honor.
13          THE COURT:  Yes, that will be fine.
14          MR. SLADE:  We'll do that.
15          THE COURT:  A minute order would be
16   fine.  For the reasons stated on the record the
17   motion is denied.
18          MR. SLADE:  Exactly what we will do,
19   Judge.  Thank you.
20          THE COURT:  Okay.  Next on the call is
21   a motion for sanctions against Leon Ramsey for
22   failure to respond to discovery.
23          MR. SLADE:  Your Honor, I think we're
24   going to have to just vacate the trial order because
25   there is another deadline that is coming up tomorrow
0006
1    that Mr. Ramsey's counsel tells me is not going to be
2    met.  I mean, I have a lot of concerns about whether
3    we should proceed at all given that all the deadlines
4    have been missed so far.  But I think
5    that it probably makes sense to just strike the trial
6    order and set some new dates.
7          MS. YEARWOOD:  Ellen Yearwood for Leon
8    Ramsey.  Judge, counsel is referring to the deadline
9    for the doctor's report from Dr. Hillenbrand.  I got
10   a phone call from Dr. Hillenbrand over the weekend
11   saying that he was unable to complete the report by
12   yesterday, July 30th, which is the day that I
13   requested him to complete it by.
14          I had in that same request asked him
15   if he couldn't complete it by that date to advise me
16   of a date by which he could complete it.  And
17   although I called him again yesterday to say, okay,
18   so what date can you give me when you will be done, I
19   did not get a return call.  So I cannot tell you when
20   he will be done.
21          And that makes it very awkward for me
22   to come before you and say that we will not meet the
23   court's deadline of today.  But I can't tell you when
24   we can have it done.  It is impossible for me to tell
25   a doctor that he must do something.  However, if you
0007
1    set another date, I can send him a copy of the order
2    and say we have to do it by then and see what he
3    says.
4          THE COURT:  Well, you know, you had to
5    do it by what is it yesterday?
6          MR. SLADE:  It's tomorrow, Judge.
7          THE COURT:  And the burden of going
8    forward, obviously, is with the claimant.  And if you
9    don't have the evidence to go forward by the
10   deadlines that are established, you are going to be
11   unsuccessful in the prosecution of the claim.
12          MS. YEARWOOD:  Yes, sir.
13          THE COURT:  I think you're actually
14   quite fortunate that Mr. Slade is willing to vacate
15   the current order as opposed to insisting on
16   compliance with it.  But given his willingness to do
17   that, I will accommodate you.  The current order will
18   be stricken, and what do you propose as far as a
19   deadline for coming up with a new one?
20          MS. YEARWOOD:  I asked him to agree to
21   30 days.
22          MR. SLADE:  My problem, Judge, is that
                        Page 3

A 134

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Honorable  Eugene R. Wedoff

Hearing Date  7/31/07

Bankruptcy Case No.  02-B-48191

Adversary No. _____

Title of Case  In re UAL Corporation

Brief Statement of Motion  Motion of Peter Hoffman to Vacate Order (Docket No. 16772)

Names and Addresses of moving counsel  Peter Hoffman

Representing

## ORDER

The motion is denied for the reasons stated in open court.

Eugene R. Wedoff

cc: Peter Hoffman, 42 Walnut Street, Upton, MA 01568

A 135

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



Chapter 11

Case No. 02B48191

In re:

*United Airlines, Inc.,*

**AFFIDAVIT IN SUPPORT OF
MOTION TO ENLARGE TIME
TO FILE APPEAL**

Debtor

Hon E R. Wedoff

Hearing Date: September 11, 2007
Hearing Time: 10:00 AM

| Creditor: | Case: | Claim#: | Claim Date: | Claim Total: |
|---|---|---|---|---|
| Peter Hoffman | 02-48210 | 345 | 2/6/03 | $2,250,000.00 |

1. I am a Creditor in the above captioned proceeding. I make this affidavit based on personal knowledge of the facts to which I can testify as a witness or where noted upon information and belief that I trust to be true from the circumstances.

2. Pursuant to Bankruptcy Rule 8002 (C)(2), I respectfully request leave to file the within Notice of Appeal.

3. Statement of the facts. Hoffman was promised a Pilot Position with United. United did not follow through with its promise. Hoffman sought relief in NY courts. Matter was removed to Federal Court and then stayed by the United Bankruptcy filing. Matter was resurrected in 2007 with four motions. The first two motions were to disallow based on statute of limitations. These motions were denied. The third and fourth were to disallow based on merits. These were granted. I am seeking permission to file the notice of appeal within twenty days of the expiration of the date by which the notice of appeal may be filed as a matter of right.

4. Statement of questions to be presented in the appeal and for relief sought is, in part, as follows:

    A. Did Hoffman present a genuine issue of fact which would compel the court to deny United's motion to disallow as this motion is tantamount to a motion for summary judgment?

    B. The relief sought is to vacate the order disallowing the claim handed down on June 28th, 2007 and seek an order denying Uniteds' motion to disallow.

A 137

2

5.    I ask that the court permit leave to appeal for the excusable neglect as described
below. I failed to timely file the attached Notice for the following reasons:

 a. While the court was clear to mention that I must file my notice of appeal
within 10 days of docketing, I did not know that I was not going to be
served with that decision upon docketing.

 b. Please allow me to explain why I did not know of the docketing. I am
acquainted with NY law. I believed that United was required to serve a
"Notice of Entry" on me. When I was served, I understood that the Notice
of Entry would now be docketed. I have learned this is not the case. For
this reason, I was not checking for the order. As I thought that local laws
(in this case NY, since this is a case that was brought in NY) were adopted
by the Federal Courts, I waited for the order to be served on me; of course
that never happened. On July 12th, 2007, Ms. Williams was, after I
inquired, kind enough to provide a copy of the order to me via fax. I then
learned that the order was docketed on July 2nd, 2007. I scrambled to
secure an answer and concluded that a motion for reconsideration was the
appropriate step to take as I felt, respectfully, that a mistake had been
made by the Court and that the motion for reconsideration had no specific
filing time limit.

 c. On July 17th, 2007, I served United and provided the Court with a copy of
my Motion and Affidavit in Support for Reconsideration of the Court's
June 28, 2007 ruling dated July 12th, 2007. The Court handed its' decision
down on my Motion for Reconsideration on July 31, 2007 allowing the
order to disallow to stand.

6.    The <u>timeline</u> is as follows
 a. Decision in controversy was handed down on June 28th, 2007
 b. Decision was docketed on July 2nd, 2007
 c. I learned of the order being issued AND the docketing date on July 12th,
2007 after inquiring of Court room Deputy Williams by telephone.
 d. Time to file a notice of appeal expired on July 12th, 2007.
 e. Time to file a motion for an extension for leave to appeal expires 20
days after the expiration of the 10 days; thus August 2nd, 2007.

7.    Pursuant to Fed. R. Bankr. P. 8002 (C) (2) permits the court to grant a motion for an
extension when excusable neglect has been found and motion is made within 20 days
of the expiration of the time to appeal.

8.    In the US Supreme Court opinion in Pioneer Investment Services Co. v. Brunswick
. . . . . . . held that "excusable neglect" under Rule

3

contemplated that the courts would be permitted, where appropriate, to accept late
filings caused by inadvertence, mistake, or clueless, as well as by intervening
circumstances beyond the party's control."

9.    While it may . . . . .

A 138

contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or clueless, as well as by intervening circumstances beyond the party's control."

9.   While it may be a bit embarrassing, I feel that my situation falls under all of these descriptors (inadvertence, mistake, or clueless).

    a.   What I did was inadvertent; I simply did not know;
    b.   This was a simple (actually complicated) mistake;
    c.   I had no idea of the mistake that I was making; thus clueless.

I respectfully suggest that there is no good reason not to apply the Pioneer rationale to the "excusable neglect" requirement of Rule 8002(c)[1].

6.   I have attached the following exhibits:

    A -  Affidavit in Opposition – dated 6/8/07
    B -  United's Response to Claimant Peter Hoffman's Affidavit in Opposition – dated 6/18/07
    C -  Sur Reply to United's Response- dated 6/22/07
    D -  United's Motion for Reconsideration – dated 6/7/07
    E -  Transcript of Proceeding Before the Hon. Eugene R. Wedoff – dated 6/28/2007
    F -  Order – dated 6/28/07
    G -  Affidavit in Support for Reconsideration of the Court's June 28, 2007 Ruling - dated 6/7/12/07
    H -  United's Opposition to Peter Hoffman's Motion for Reconsideration – dated 7/15/07
    I -   Reply Affidavit in Support for Reconsideration – dated July 30, 2007
    J -   Proposed Notice of Appeal

7.   I hereby, respectfully, request that the court adopt the position cited above and find that "excusable neglect" governs as was held in the Pioneer case and grant an order enlarging my time to file the Notice of Appeal to at least 10 days from the date that this motion is granted, if granted.

---

[1] Dial Nat'l Bank v. Van Houweling (In re Van Houweling), 258 B.R. 173 (B.A.P. 8th Cir. 2001); Official Comm. Field (In re Investors & Lenders, Ltd.), 169 B.R. 546 (Bankr. D.N.J. 1994); Graves v. Rebel Rents, Inc. (In re Rebel Rents, Inc.), 326 B.R. 791, 806 (Bankr. C.D. Cal. 2005) ("Absence of prejudice and the presence of good faith do not trump an attorney's ignorance or misunderstanding of unambiguous rules of procedure"); Cavozos v. Mid State Trust II (In re Hillsborough Holdings Corp.), 270 B.R. 306 (Bankr. M.D. Fla. 2001) (counsel's work schedule not excusable neglect. Contra In re Mowers, 29 C.B.C.2d 1549, 160 B.R. 720 (Bankr. N.D.N.Y. 1993) (confusing the applicability of the Pioneer case generally with its application to the particular facts before the court).

4

Dated:    July 31, 2007

Respectfully submitted and sworn to under penalty of perjury.

Peter Hoffman
Creditor
42 Walnut Street
Upton, MA 01568
212-794-1000
Fax-794-1919

Sworn to before me on 31st day of July 2007.

Notary Public

SANDRA BADILLO
NOTARY PUBLIC, N.Y. STATE
NO. 01BA6056427
QUALIFIED IN BRONX COUNTY
COMM EXPIRES MARCH 26, 20 [?]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 02-B-48191 |
| UAL CORPORATION, et al., | ) | (Jointly Administered) |
| | ) | |
| Reorganized Debtors. | ) | Honorable Eugene R. Wedoff |
| | ) | Hearing Date: September 11, 2007 |
| | ) | Hearing Time:  10:00 a.m. |

### UNITED'S OPPOSITION TO PETER HOFFMAN'S MOTION FOR AN EXTENSION OF THE TIME TO APPEAL [RELATED TO DOCKET NO. 16823]

Peter Hoffman asks the Court to extend his time to appeal from the June 28, 2007 Order disallowing his proof of claim.  Because Hoffman's motion was filed on the 20th day after his time to appeal had already expired, an extension is permitted only if Hoffman demonstrates "excusable neglect" for his failure to timely appeal.  *See* Fed. R. Bankr. P. 8002(c)(2). Hoffman's motion should be denied.  His failure to file a timely notice of appeal was caused by neglect, but not "excusable" neglect. *See Pioneer Inv. Serv. Co. v. Brunswick Assoc.*, 507 U.S. 380, 392 (1993) ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").

On June 28, 2007, Hoffman appeared by telephone at the hearing where the Court disallowed his proof of claim; he even asked a number of questions.  (Ex. A, 6/28/07 Tr. at 2-7) The Court's order was entered that day by the clerk, and appeared on the docket four days later. (Docket No. 16758)  According to Hoffman's motion, he failed to file a notice of appeal within 10 days of docket entry because he failed to check the docket, in reliance on an unspecified New York state rule that purportedly required the order to be 'served' upon him after it was entered. Therefore, according to Hoffman, he did not know that the order had been entered on the docket until the day before his time to appeal expired. *See* Hoffman Motion at 2.

This excuse is woefully insufficient to constitute "excusable" neglect. It is well-settled that litigants (even pro se litigants) have an independent duty to monitor the docket, and their failure to do so does not give rise to "excusable neglect" for missing deadlines. *In re American Metrocomm Corp.*, 328 B.R. 92, 93 (D. Del. 2005) ("[A] party's failure to receive notice of the entry of an order does not amount to excusable neglect, because a party has an independent duty to keep informed of the progress in his or her case."); *In re Warrick*, 278 B.R. 182, 187 (9th Cir. BAP 2002) ("It is well-settled that failure to receive notice of entry of judgment or order is not an excuse for an untimely appeal because it is the party's affirmative duty to monitor the dockets.") (citations omitted). Similarly, lack of knowledge of the applicable rules, or a misunderstanding about which rules apply, is not a basis for finding "excusable" neglect. *See, Prizevoits v. Indiana Bell. Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996) ("The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules."); *In re Swann*, 2007 WL 1728706, at *5 (D. Md. 2007) (where plaintiff relied on prior experience in other courts and missed a deadline, excusable neglect did not exist because "the Plaintiff's failure to file a timely notice of appeal was due to his carelessness or inadvertence"); *In re LeClair*, 360 B.R. 388, 397 (Bankr. D. Mass. 2006) (same); *In re Pyramid Energy, Ltd.*, 165 B.R. 249, 252 (Bankr. S.D. Ill. 1994) ("[T]he sort of 'neglect' that could and should have been avoided . . . cannot be characterized as 'excusable.' To rule otherwise would undermine the integrity of the rules and erode the time requirements that have been imposed to ensure prompt administration of bankruptcy appeals."). This general principle — that a litigant's failure to check the docket to learn when an order is entered because of a misunderstanding about the applicable rules is not "excusable" neglect — is especially applicable here, for two reasons.

2

*First*, after disallowing Hoffman's proof of claim, this Court specifically warned Hoffman that he would need to check the docket personally to preserve his right to appeal:

> [THE COURT]: Mr. Hoffman, you'll have a right to appeal that will begin running as soon as the order is docketed, *so you'll want to check, if you do wish to pursue appeal, to find out when that docketing takes place. I believe you have ten days thereafter to file a notice of appeal in the district court.*

Ex. A, 6/28/07 Tr. at 6. Hoffman ignored the Court's explicit instructions, at his own peril. Hoffman admits that he never checked the docket at all. In light of the Court's explicit direction that Hoffman check the docket if he wished to appeal, his neglect is certainly not "excusable" as defined by the bankruptcy rules.

*Second*, a full day prior to the expiration of Hoffman's time to appeal, the undersigned counsel specifically told Hoffman to check the docket because the order had been entered some time ago. *See* Ex. B, 7/11/07 Slade E-mail to Hoffman. Hoffman still did not check the docket. Nor did Hoffman file the simple, one-page notice of appeal that he has attached to his motion; he clearly could have done so in a timely fashion. Instead, Hoffman (by his own admission) made the strategic decision not to timely appeal, and instead "concluded that a motion for reconsideration was the appropriate step to take." Hoffman Mtn. at 2. Hoffman therefore waited an additional 20 days, during which he prosecuted a baseless motion for reconsideration,[1] before finally filing his motion to extend the time to appeal. There is no basis for finding his conduct "excusable" as defined by Rule 8002(c)(2).

---

[1] Hoffman's motion for reconsideration was denied on July 31, 2008. Docket No. 16817. Hoffman did file a timely appeal from the order denying his motion for reconsideration; that appeal is currently awaiting transmittal to the district court. *See* Docket Nos. 16831-32.

Finally, although he proceeds pro se, Hoffman is no legal ingénue worthy of leeway excusing his conscious disregard for the applicable deadline of which the Court specifically made him aware. Rather, Hoffman has a long — some would say excessive — history of filings with the Court that demonstrate his familiarity (albeit not always his compliance) with the applicable substantive rules. *See* Docket Nos. 5277, 16557, 16683, 16723-24, 16730, 16747, 16772, 16820. There is no basis for finding his neglect here "excusable." Accordingly, United respectfully requests that Hoffman's motion to enlarge the time to appeal be DENIED.

Dated: Chicago, Illinois
      August 24, 2007

Respectfully submitted,


 / s /  Michael B. Slade
Marc Kieselstein (ARDC No. 6199255)
David R. Seligman (ARDC No. 6238064)
Michael B. Slade (ARDC No. 6274231)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601


Counsel for the Reorganized Debtors

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


| | | |
|---|---|---|
| In re: | ) | |
| | ) | No. 02 B 48191 |
| UAL CORP., et al., | ) | |
| | ) | Chicago, Illinois |
| | ) | June 28, 2007 |
| Debtor. | ) | 10:00 a.m. |


TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE EUGENE R. WEDOFF


APPEARANCES:

MR. MIKE SLADE
on behalf of United;

MS. ELLEN YEARWOOD
on behalf of Leon Ramsey.



ALSO PRESENT:

MR. PETER HOFFMAN (TELEPHONICALLY).

Page 2

1            THE CLERK:  UAL Corporation, 02 B 48191.

2            THE COURT:  Okay.  Let's take up

3 Mr. Hoffman's matter first.

4                Would you state your appearance,

5 Mr. Hoffman.

6            MR. HOFFMAN:  Peter Hoffman, Your Honor.

7            THE COURT:  Okay.

8            MR. SLADE:  Your Honor, Mike Slade for

9 United.

10           THE COURT:  Okay.  I have a ruling to

11 read into the record.  This matter is before the

12 court, claim number 345 of Peter Hoffman, on

13 United's objection.  Mr. Hoffman's claim is based on

14 damages arising from an alleged failure by United to

15 process his Competitive Transfer Review, or CTR, to

16 become a pilot in violation of an alleged oral

17 contract.  Hoffman alleges that, had the CTR been

18 processed, United would have hired him as a pilot.

19 Hoffman brought this claim in New York state court

20 in 1999 and United removed it to federal district

21 court.  The parties completed discovery, as

22 reflected in the case's docket report and two orders

23 of the magistrate judge presiding over the case.

24 United moved for summary judgment.  However, before

25 judgment could be rendered, United filed for

1 bankruptcy and Hoffman filed his claim as a creditor

2 of the estate.  United objects to the claim on two

3 grounds.  First, United argues that New York's

4 statute of limitations bars this claim.  Second,

5 United argues that Hoffman's claim fails on its

6 merits.

7                    At an earlier hearing, this court

8 rejected United's statute of limitations argument

9 and instructed the parties to address the merits.

10 United filed a motion for reconsideration of its

11 statute of limitations defense and both parties

12 submitted arguments regarding the merits.  Both

13 motions are now ready for ruling.

14                    United's motion for reconsideration

15 will be denied.  As discussed on the record on

16 May 17, 2007, United had a reasonable amount of time

17 to complete the alleged oral contract, and the

18 statute of limitations did not begin running until

19 after that reasonable time period ended.  Again, as

20 previously discussed, the length of that reasonable

21 period is a question of fact under New York law.

22                    On the merits, however, United's

23 objection will be sustained and the claim will be

24 disallowed.  By objecting to the claim under Section

25 502(b) of the Bankruptcy Code, Title 11 U.S.C.,

Page 4

1 United instituted a contested matter is adjudicated

2 in accordance with Rule 9014 of the Federal Rules of

3 Bankruptcy Procedure.  Rule 9014(c) applies to

4 contested matters the provisions of Bankruptcy Rule

5 7056, which, in turn, incorporates Rule 56 of the

6 Federal Rules of Civil Procedure.  Summary judgment

7 is thus available in the claims adjudication

8 process.

9            Accordingly, the legal standard to

10 be applied is whether there is any genuine issue as

11 to any material fact such that this matter should be

12 set for trial.  In order to prevail, Hoffman must

13 establish that he would have been hired as a pilot

14 had the CTR been processed.  This is a material

15 fact.  See Fishman versus Teter, 133 F.2d 222,

16 Seventh Circuit, 1943, defining a material fact as

17 one that a party must establish in order to prevail.

18            A genuine issue as to this material

19 fact would exist if there were sufficient evidence

20 favoring Hoffman for a jury to return a verdict in

21 his favor.  Anderson versus Liberty Lobby, Inc., 477

22 U.S. 242, 1986.  Because Hoffman has offered no

23 evidence to support this fact, summary judgment is

24 appropriate.  Save Our Cemeteries, Inc. versus

25 Archdiocese of New Orleans, Inc., 548 F.2d 1074,